*154
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The central question we confront is whether New York law —in particular CPL article 700 — governs admissibility in New York prosecutions of foreign wiretap evidence. This question, not expressly answered by our comprehensive statutory scheme for electronic eavesdropping or previously addressed by us, foreshadows issues that will undoubtedly recur as boundaries dissolve in an era of electronic and satellite communication.
 

 We turn first to consideration of the events here, which included independent investigations in New York and Canada and culminated in defendant’s conviction for gambling offenses.
 

 The New York Investigation
 

 Acting upon a tip from Texas State Police, in late 1989 New York State Police began investigating an alleged gambling ring operating in Westchester and Bronx Counties. By April 1990, enough evidence had been gathered through surveillance and inspection of telephone records to persuade Bronx Supreme Court to issue an eavesdropping warrant for telephone lines assigned to the last-known addresses of partid
 
 *155
 
 pants of the ring. As a result of that phase of the investigation, several suspects were arrested and gambling equipment seized.
 

 Months later, on July 5, 1990, Westchester Supreme Court authorized placement of a PEN register — a device that recorded all outgoing telephone numbers — on the telephone of Todd Alpert, a suspected member of the ring, and on August 27, 1990, the same court signed an eavesdropping warrant for Alpert’s telephone. Among the calls intercepted were numerous conversations between Alpert and defendant concerning gambling.
 

 The authorities then secured warrants authorizing search of eight separate locations, including defendant’s home, which were executed simultaneously on September 10, 1990. At defendant’s home, the police seized shopping bags filled with packets of gambling records, each marked with dates between September 1989 and April 1990, as well as two locked metal boxes. One box — for which defendant produced the key — contained $70,000 in cash. Additional documents were determined to be defendant’s daily records of bets taken, and some entries corresponded to conversations intercepted pursuant to the wiretap authorized on August 27th. Defendant was arrested immediately.
 

 Three days later, on September 13, the wiretap was terminated and sealed by the issuing Judge. The People filed a felony complaint charging defendant with seven instances of promoting gambling based on bets "received and placed during a court-ordered eavesdropping warrant, during the period of August 27, 1990 through September 10, 1990.” A Grand Jury indicted defendant on January 24, 1991, additionally charging defendant with possession of records on sporting events during January and September of 1990. Defendant was arraigned on this indictment, No. 91-0038, on February 1, 1991.
 

 On March 12, 1991, defendant moved to suppress all evidence seized and all intercepted communications on the ground that the Westchester County wiretap warrant and affidavits were not turned over to defendant within 15 days of arraignment. The People conceded their failure to comply with the statutory mandate of GPL 700.70, and themselves moved for dismissal of the indictment since, without the wiretap evidence, they lacked sufficient evidence to go forward with prosecution of the indictment. On May 3, 1991, the court
 
 *156
 
 entered an order of dismissal in the interest of justice pursuant to CPL 210.40 (1).
 

 Based upon presentation of still more gambling records seized from defendant’s house on September 10, 1990, the People secured a second indictment, No. 91-0650. The first count of this indictment was identical to the first count of indictment No. 91-0038, charging first degree possession of gambling records on September 10, 1990. Additional counts charged various gambling offenses on 35 days between September 25, 1989 and April 1, 1990.
 
 [1]
 
 At his arraignment on April 19, 1991, defendant received copies of the Westchester warrants and supporting affidavits, which included the April 23, 1990 Bronx wiretap warrant.
 

 Defendant moved to dismiss the second indictment on several grounds, including that dismissal of the first indictment had resolved the charges, and that failure to give timely notice of wiretap evidence in the first prosecution precluded use of that evidence and all evidence derived from it in any subsequent prosecutions. A hearing was ordered to determine whether the People possessed probable cause as to the April 23, 1990 Bronx eavesdropping warrant.
 

 The Canadian Investigation
 

 On January 6, 1992, when the parties appeared for trial, the People for the first time informed defendant of their intent to offer additional wiretap evidence obtained by Canadian authorities during the course of an entirely independent investigation. During investigation into an Ontario gambling ring that began October 24, 1989 and concluded on January 11, 1990, Canadian authorities recorded hundreds of conversations between their suspect in Ontario and defendant in New York. Under circumstances not disclosed to the court, New York authorities first learned of the Canadian investigation on December 18, 1990. In spring of 1991, a Canadian inspector met with authorities at the Bronx District Attorney’s office and exchanged information with law enforcement agencies in New York.
 

 On January 18, 1991, the People had obtained a copy of the Canadian court’s authorization for placement of the wiretap,
 
 *157
 
 but were informed that the accompanying affidavit was sealed and not available for inspection under Canadian law. A partially redacted copy was received nearly a year later, on January 13, 1992, and immediately turned over to defendant.
 

 Defendant moved pursuant to CPL article 710 to suppress evidence of the Canadian wiretaps on the grounds that, in violation of CPL 700.70, he had not received the wiretap warrants and supporting affidavits within 15 days of his arraignment. While acknowledging that he would not be entitled to such notice under Federal wiretapping laws, he argued that New York law was "far more stringent, expansive and protective” of the rights of its citizens in the area of eavesdropping. The People sought to establish good cause for late notice on the grounds that the wiretap affidavit had not been obtained from Canadian authorities until the very day of the hearing.
 

 Citing
 
 United States v Cotroni
 
 (527 F2d 708), the court denied defendant’s motion, reasoning that the objective of suppressing unlawfully seized evidence — to deter improper activity by law enforcement officers — is not furthered by suppressing, in a New York prosecution, evidence gathered in Canada. Absent a showing the evidence was obtained under circumstances that "shocked the conscience” or with the participation of United States law enforcement personnel, a defendant was not entitled to challenge admissibility of foreign wiretap evidence. Accordingly, the court determined defendant had received reasonable notice of the evidence, and was not entitled to strict compliance with the 15-day notice requirement of CPL 700.70.
 

 At the subsequent bench trial, Inspector Sandelli of the Metropolitan Toronto Police Force testified that the master tape recording of the intercepted telephone conversations was kept in storage once the surveillance ended, but was not sealed. Defendant objected to admission of the tapes on the ground that, as a matter of statutory law, the procedures employed fell short of New York’s sealing standard. No allegation was made that the procedures followed fell short of Canada’s own legal standards. The court, after inquiry into the safeguards taken to preserve the integrity of the master tape, overruled defendant’s objection. Defendant was convicted of numerous gambling-related offenses, and the Appellate Division affirmed.
 

 Before this Court, defendant asserts four claims: that the
 
 *158
 
 Canadian wiretap evidence should have been precluded because of the People’s failure to provide timely notice under CPL 700.70; that preclusion of the Westchester wiretap evidence for lack of timely notice following the first indictment barred the People from seeking to use that evidence — and any evidence derived from it — upon prosecution of the second indictment; that the People failed to comply with the statutory sealing requirements following termination of the Westchester wiretap; and that defendant was deprived of his right to a speedy trial.
 

 We now reverse on the first and second grounds.
 

 I
 

 Condemned as a nuisance at common law (4 Blackstone, Commentaries, at 168) and long recognized as highly intrusive
 
 (Berger v New York,
 
 388 US 41, 45), eavesdropping has grown more simple and yet infinitely more complex in the modern communication age.
 

 New York State attempted to regulate wiretapping and other forms of electronic surveillance as early as 1895
 
 (Berger v New York,
 
 388 US 41, 46) and created a State constitutional privacy interest in electronic communications long before Federal recognition that the Fourth Amendment protects against electronic eavesdropping (NY Const, art I, § 12 [1938];
 
 Katz v United States,
 
 389 US 347 [1967]).
 
 [2]
 
 Despite our stated public policy, unauthorized wiretaps by law enforcement officials far outnumbered legal wiretaps (Note,
 
 Wiretapping in New York,
 
 31 NYU L Rev 197, 214), and evidence gathered as a result of these illegal wiretaps was routinely admitted into evidence in criminal proceedings
 
 (People v Variano,
 
 5 NY2d 391;
 
 People v Dinan,
 
 11 NY2d 350).
 

 In 1962, however, the Legislature enacted CPLR 4506, barring admission in any action of eavesdropping evidence unlawfully obtained by any person (L 1962, ch 308). This State exclusionary provision, therefore, applies not simply to eavesdropping evidence unlawfully obtained by law enforcement officers, but also to such evidence gathered by any individual,
 
 *159
 
 and serves to deter both unlawful governmental conduct and that of private individuals
 
 (cf., State v Mollica,
 
 114 NJ 329, 554 A2d 1315 [overriding purpose of exclusionary rule is to deter unlawful State conduct]).
 

 In 1968, New York’s statutory procedure for obtaining wiretap authorization was struck down as unconstitutional
 
 (Berger v New York,
 
 388 US 41). Congress, in response to
 
 Berger
 
 and
 
 Katz (supra),
 
 enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 USC § 2510
 
 et seq.),
 
 imposing upon the States minimum standards for electronic surveillance. By a grant of enabling power at 18 USC § 2516, Congress permitted the States to adopt procedures and standards more restrictive than those imposed by the Federal Act or even to prohibit wiretapping within their borders altogether.
 
 [3]
 

 New York’s electronic surveillance laws, codified at CPL article 700, brought State standards for court-authorized eavesdropping warrants into conformity with those mandated by Title HI
 
 (People v Mastrodonato,
 
 75 NY2d 18, 23, quoting Governor’s Mem, L 1969, eh 1147, 1969 McKinney’s Session Laws of NY, at 2586). While the article originally established the procedure in New York for obtaining warrants to engage in wiretapping or mechanical overhearing of conversation— commonly known as "bugging” — in 1988, following passage of the Federal Electronic Communications Privacy Act of 1986, the scope of article 700 was expanded to include regulation of video surveillance and interceptions of transmissions over facsimile machines, computer modems, paging devices, electronic mail, closed circuit television, and any other "electronic communication” (CPL 700.05 [3]). New York’s law now requires suppression of both aural and electronic communications intercepted in violation of statutory standards, a broader remedy than provided by Federal law, where suppression of evidence is still limited to statutory violations in intercepting aural communications (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL art 700, 1995 Cum Ann Pocket Part, at 106-107).
 

 Indeed, this Court requires scrupulous compliance with
 
 *160
 
 article 700, for without such compliance State officials lack authority to wiretap, any interceptions they make are unlawful, and any evidence derived from the wiretap is inadmissible
 
 (People v Sher,
 
 38 NY2d 600, 604). Beyond the question of authority, however, stands our strong public policy of protecting citizens against the insidiousness of electronic surveillance by both governmental agents and private individuals (CPLR 4506; CPL
 
 art
 
 700;
 
 People v Liberatore,
 
 79 NY2d 208, 213, quoting
 
 People v Washington,
 
 46 NY2d 116, 124).
 

 New York State has, therefore, responded to the problems raised by electronic surveillance with greater protection than is conferred under Federal law, and continues to assert this strong public policy, through evolving legislation, as technology advances.
 

 II
 

 While the law may be clear as to wiretaps authorized and recorded within the boundaries of this State, this case presents a different question: where interception of a telephone conversation originating in New York is accomplished on foreign soil, by foreign authorities pursuant to foreign law, what application does our State law have when New York prosecuting authorities later seek to introduce that evidence in a New York court? Our statutory scheme is silent on this point
 
 (cf., Mustafa v State,
 
 323 Md 65, 591 A2d 481).
 

 The parties offer simple — and irreconcilable — answers. According to defendant, “any” intercepted communication, in the words of CPL 700.70 and CPLR 4506, sought to be introduced in a New York proceeding must meet all of the requirements of New York law. By contrast, the People point out that literal compliance with article 700 would be impossible,
 
 [4]
 
 and would exempt out-of-State foreign eavesdropping evidence from our statutory scheme, limiting any challenge to the narrow grounds that have evolved under search and seizure
 
 *161
 
 jurisprudence: instances where the conduct of the foreign government "shocks the conscience” or was the result of a joint New York-foreign investigation. While each side points to logical support for its position, our statutory scheme, reflecting our State history and policies, leads us to conclude that the answer to the particular question posed lies somewhere in between.
 

 We reject defendant’s threshold contention that interception in Toronto of a telephone conversation between the Canadian suspect and defendant — located in New York — constituted a violation of New York’s privacy act (Penal Law art 250). Although no doubt technologically possible for an individual in Canada to tap into a telephone in New York State, here the interception was of a Canadian telephone. Penal Law article 250 criminalizes the act of "intentional overhearing or recording of a telephonic * * * communication” (Penal Law §250.00 [1]). Monitoring of defendant’s conversations was incidental to intentional surveillance of the Canadian suspect’s conversations. The result might be different, of course, if the objective of foreign authorities had been to monitor
 
 defendant’s
 
 telephone conversations while circumventing the New York privacy act
 
 (see,
 
 CPL 20.20 [2] [a] [defining jurisdiction of offenses where conduct occurs outside of State]).
 

 While New York law governing acquisition of wiretap evidence in New York State is, by its terms, inapplicable to the methods by which foreign law enforcement officials procure wiretap evidence
 
 (see,
 
 n 4,
 
 supra),
 
 New York law does at a minimum control the conduct of New York prosecutors seeking to introduce wiretap evidence into our courts. The statutory procedure applicable to admissibility of electronic eavesdropping evidence — independent of any questions concerning the authorization and acquisition of such evidence— obligated the People to provide defendant, within 15 days of arraignment, with copies of the Canadian wiretap warrant and affidavits to permit him to investigate grounds for suppression.
 

 Under New York’s comprehensive statutory scheme governing electronic eavesdropping (CPL art 250, 700, 710.20 [2]; CPLR 4506), CPLR 4506 establishes the ground rules for admission. Subdivision (1), the suppression provision, bars evidentiary use of the "contents of any overheard or recorded communication, conversation or discussion, or evidence derived therefrom, which has been obtained by conduct consti
 
 *162
 
 tuting the crime of eavesdropping. ”
 
 [5]
 
 In civil cases, the three recognized grounds for suppression parallel those set forth in the Federal wiretap provisions (18 USC §§ 2515, 2518 [10] [a];
 
 see, People v McGrath,
 
 46 NY2d 12, 26), and include a determination that
 

 (a) The communication, conversation or discussion was unlawfully overheard or recorded;
 

 (b) The eavesdropping warrant under which it was overheard or recorded is insufficient on its face; or
 

 (c) The eavesdropping was not done in conformity with the eavesdropping warrant.
 

 By contrast, and in a departure from Title III, grounds for suppression in criminal proceedings are expanded and separately codified at CPL 710.20 (2) — a criminal defendant may seek suppression of any communication on the broad grounds that it was "obtained under circumstances precluding admissibility thereof.”
 

 The notice provision that sets in motion a defendant’s right to seek suppression under CPL 710.20 (2) appears at CPL 700.70:
 
 [6]
 
 within 15 days, the People must furnish a defendant with a copy of the eavesdropping warrant and accompanying application under which interception was authorized or approved. Absent compliance with this notice provision, "[t]he contents of any intercepted communication, or evidence derived therefrom, may not be received in evidence or otherwise disclosed upon a trial of a defendant,” although the 15-day period may be extended by the trial court "upon good cause shown” if the extension would not prejudice defendant.
 

 Because CPL 700.70 is intended to afford a criminal defendant an opportunity to seek to suppress inadmissible eavesdropping evidence, a defendant is entitled to notice of any
 
 *163
 
 electronic surveillance evidence which is subject to suppression under GPL 710.20 (2).
 

 At a minimum — -as the People concede — a defendant has a right to seek suppression of evidence gathered by foreign law enforcement authorities on the grounds that the challenged search was conducted in connection or cooperation with domestic law enforcement authorities
 
 (Elkins v United States,
 
 864 US 206, 221-222;
 
 Byars v United States,
 
 273 US 28, 33;
 
 Stonehill v United States,
 
 405 F2d 738 [9th Cir]) or that the conduct of the foreign authorities would shock the conscience of our courts
 
 (Stowe v Devoy,
 
 588 F2d 336 [2d Cir];
 
 United States v Callaway,
 
 446 F2d 753,
 
 cert denied sub nom. De Vyver v United States,
 
 404 US 1021;
 
 State v Mollica,
 
 114 NJ 329, 554 A2d 1315, 1325). Because grounds for suppression of foreign wiretap evidence exist, a defendant has a correlative right to notice of foreign wiretap evidence under CPL 700.70.
 

 Since defendant in the present case was not provided with copies of the Canadian eavesdropping warrant and supporting affidavit within 15 days of his arraignment, the People failed to meet their notice obligations. While the People made a superficial claim of good cause for the delay based on their inability, under Canadian law, to procure the sealed documents, the Appellate Division noted (197 AD2d 3, 13) the People’s "apparent lack of good faith” in not promptly disclosing the existence of the Canadian wiretap evidence (which was known to them as early as December 1990), not providing preliminary notice of an intent to use the wiretap evidence, and in not disclosing the Canadian warrant and supporting papers as soon as they were received from Canadian authorities.
 

 Untimely acquisition could constitute good cause for failure to meet the disclosure requirements of CPL 700.70, but the record does not support that inference here.
 

 Our decision today rests solely on statutory grounds. We note that, because defendant’s threshold claim of statutory entitlement to notice was rejected, no suppression motion followed. Defendant therefore raises no claim before this Court that would afford us an opportunity to address the troubling vestiges of the "silver platter doctrine” that arise when a foreign jurisdiction provides this State with evidence obtained in violation of our own State standards
 
 (see, e.g., State v Williams,
 
 94 Wash 2d 531, 617 P2d 1012, 1017 [Federally seized wiretap evidence suppressed under Washington’s
 
 *164
 
 privacy act, not its Constitution]) or those of the foreign jurisdiction itself, or both
 
 (see, State v Lucas,
 
 372 NW2d 731 [Minn]).
 

 States differ on whether to allow prosecutors to employ wiretap evidence seized in another jurisdiction pursuant to conduct that would clearly render that evidence inadmissible under the State’s own standards. Some adhere to the Federal view that the overriding purpose of the exclusionary rule is to deter unlawful governmental conduct, and that one State’s laws have no deterrent effect on conduct of governmental agents of another jurisdiction
 
 (see, e.g., United States v Mitro,
 
 880 F2d 1480;
 
 United States v Cotroni,
 
 527 F2d 708 [2d Cir];
 
 Saldana v State,
 
 846 P2d 604 [Wyo]).
 

 Support also exists for approaching the question as a choice-of-law problem, and choosing the law either of the forum State or the State where the seizure occurred
 
 (Preston v United States,
 
 376 US 364, 366;
 
 United States v Rowell,
 
 903 F2d 899 [2d Cir];
 
 United States v McNulty,
 
 729 F2d 1243,
 
 on rehearing en banc
 
 729 F2d 1264 [10th Cir];
 
 People v Blair,
 
 25 Cal 3d 640, 602 P2d 738;
 
 Commonwealth v Bennett,
 
 245 Pa Super 457, 369 A2d 493;
 
 State v Williams,
 
 94 Wash 2d 531, 617 P2d 1012,
 
 supra).
 
 In another case, therefore, we will be called to decide whether to apply our State law to suppress foreign electronic eavesdropping evidence that offends our State standards
 
 (see, e.g., State v Davis,
 
 313 Ore 246, 834 P2d 1008;
 
 State v Thompson,
 
 114 Idaho 746, 760 P2d 1162;
 
 State v Minter,
 
 116 NJ 269, 561 A2d 570;
 
 State v Harms,
 
 233 Neb 882, 449 NW2d 1;
 
 cf., People v Guerra,
 
 65 NY2d 60, 63;
 
 People v Di Raffaele,
 
 55 NY2d 234, 242 [in cases predating CPL art 705, declining to find greater State constitutional interest under article I, § 12 in privacy of telephone numbers dialed out by defendant]).
 

 III
 

 Because there must be a reversal and new trial without the Canadian wiretap evidence, we briefly address defendant’s remaining preserved contentions that preclusion of the Westchester wiretap evidence for lack of timely notice following the first indictment barred the People from seeking to use that evidence upon prosecution of the second indictment; and that defendant was deprived of a speedy trial.
 
 [7]
 

 
 *165
 
 While we have previously reversed a conviction due to the People’s failure to comply with the notice requirements of CPL 700.70
 
 (People v Schulz,
 
 67 NY2d 144), the question was not put to us in that case whether the precluded evidence could be used on retrial or — as is the case here — in a subsequent prosecution. CPL 700.70 states that "[t]he contents of any intercepted communication, or evidence derived therefrom, may not be received in evidence or otherwise disclosed upon a trial of a defendant unless the people, within fifteen days after arraignment and before the commencement of the trial, furnish the defendant with a copy of the eavesdropping warrant, and accompanying application.”
 

 We conclude that in the present case the People’s effort to cure their initial failure to provide defendant with timely notice of the Westchester County eavesdropping warrant and supporting application by commencing a new prosecution and serving him a second time, immediately upon his arraignment on the second indictment, was unavailing. If the People, unable to establish good cause for delay, were simply allowed to begin a new prosecution at which defendant were furnished timely notice of intent to use wiretap evidence, the notice provision would be easily sidestepped and of little force. Nor would a permissive reading conform to our bedrock principle that there must be “strict compliance with the provisions of New York’s eavesdropping statute * * * and that the burden of establishing such compliance rests with the prosecution”
 
 (People v Schulz,
 
 67 NY2d 144, 148,
 
 supra).
 

 While one purpose of the notice requirement — to provide a defendant with an opportunity to obtain a pretrial ruling on the admissibility of wiretap evidence — would not be diminished if such evidence were permitted to be used in a second prosecution, the requirement of prompt notice serves an ancillary purpose as well: imposition of orderliness in pretrial motion practice.
 

 The Legislature imposed stringent time requirements to effect its goal of orderly pretrial practice because of the People’s prior practice of withholding necessary discovery material until late in the process, causing delay and inconvenience
 
 (see,
 
 21st Ann Report of NY Jud Conf, 4th Ann Report by Advisory Committee on CPL, at 339-340, 348-349 [1976]). Because of our especially strong State interest in regulating
 
 *166
 
 use of wiretap evidence, the timeliness requirements under CPL 700.70 are more strict than those under CPL 710.30
 
 (People v Schulz,
 
 67 NY2d 144,
 
 supra; People v Basilicato,
 
 64 NY2d 103,
 
 supra).
 
 Preclusion for procedural failure under CPL 700.70 is therefore a true sanction, imposed without regard to the absence of prejudice to a defendant from the delay.
 
 [8]
 

 The permissive reading of our wiretap provisions urged by the People is particularly unwarranted in the present case, where the People commenced a second prosecution designed to circumvent impediments brought about by their initial, unexplained failure to comply with their statutory duty. The crimes charged in the second indictment, while for the most part occurring on different dates, were in other respects the same as those charged in the first indictment. The sheer volume of gambling-related evidence intercepted and seized in this case provided the People with the basis for countless criminal charges against defendant. Notably, the first counts of both indictments were identically worded, and charged the identical crime: possession of gambling records. While the People claim that each charge was based on possession of
 
 different
 
 gambling records, all were concededly selected from among the dozens of records seized on September 10th memorializing numerous gambling transactions on numerous dates in the months preceding the raid.
 

 The question remains whether
 
 all
 
 of the second indictment must be dismissed as based on "evidence derived” from the unnoticed Westchester warrant
 
 (see,
 
 CPL 700.70). Because the People have not been given a full opportunity to establish whether probable cause for the search warrant executed on September 10, 1990 was derived solely from the fruits of the Westchester County wiretap or independent evidence supported that warrant, the matter must be remanded
 
 (People v Whitehurst, 25
 
 NY2d 389). Upon remand, any counts con
 
 *167
 
 tained in the second indictment that duplicate counts of the first indictment must be dismissed.
 
 [9]
 

 Therefore the order of the Appellate Division should be reversed and the ease remitted to Westchester County Court for further proceedings in accordance with this opinion.
 

 Titone, J. (dissenting in part). I concur in Parts I and II of the Chief Judge’s writing insofar as they address the application of CPL 700.70 to the wiretap evidence obtained by the Canadian Government. I cannot concur, however, in Part III, which holds that the prosecution’s failure to comply with CPL 700.70’s notice requirements taints the undisclosed evidence so indelibly that neither it nor any of its "fruits” may be used in any future criminal proceeding involving the defendant. In my view, the majority’s holding on this point confuses substantive suppression with procedural preclusion and, in the process, creates a remedy that extends far beyond what is necessary and appropriate to achieve CPL 700.70’s limited legislative purpose. Accordingly, I dissent from the majority’s holding insofar as it requires "suppression” of the Westchester County wiretap evidence in this second prosecution involving new crimes.
 
 [1]
 

 Initially, the majority’s assumptions about the scope of the remedy afforded for CPL 700.70 notice violations are not justified by the language of that statute. CPL 700.70 forbids the use of "[t]he contents of any intercepted communication, or evidence derived therefrom” "upon a trial of a defendant unless the people, within fifteen days after arraignment and before commencement of the trial, furnish the defendant with a copy of the eavesdropping warrant, and accompanying application.” The foregoing statutory language establishes a timetable for disclosure that is keyed to a critical stage in the
 
 *168
 
 prosecution, i.e., the arraignment. Since the statutory preclusion penalty is predicated on a violation of this timetable, there is no logical basis for extending that remedy to
 
 all
 
 "trials of [the] defendant,” including other future prosecutions in which the disclosure timetable has been — or at least could be — observed. Accordingly, the statute’s own design suggests that the effect of any preclusion order should be limited to the particular criminal proceeding in which the notice violation occurred.
 

 Moreover, to extend CPL 700.70 preclusion beyond the particular proceeding in which the notice violation occurred is to use that remedy in a way that bears no relationship to the statute’s purpose, i.e., promoting the efficient conduct of criminal prosecutions and "afford[ing] a criminal defendant an opportunity to seek [suppression]” (majority opn, at 162;
 
 see, People v Liberatore,
 
 79 NY2d 208, 213-214;
 
 People v Schulz,
 
 67 NY2d 144, 150-151;
 
 People v Basilicato,
 
 64 NY2d 103, 118; Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 700.70, at 525;
 
 see also, People v O’Doherty,
 
 70 NY2d 479, 488). The evil to which the statute was addressed is the belated disclosure of potentially suppressible evidence "to the great and unfair surprise of an accused” and the ultimate "frustration of] the omnibus pre-trial motion procedures” resulting in "delayed motions and hearings being had at the eve of trial” (Practice Commentary,
 
 op. cit.,
 
 at 525).
 

 These identified categories of harm occur and are, indeed, complete when the People fail to furnish the defense with a copy of the necessary papers within 15 days of the defendant’s arraignment, thereby depriving it of the opportunity to launch a timely challenge to the admission of the wiretap evidence. It is at that point in the proceeding that a preclusion directive is meaningful, since it serves to neutralize the unfair surprise to the defense and obviate the need for an eleventh-hour suppression hearing. In contrast, once the proceeding in which the violation occurred has been terminated and a new indictment containing new charges has been filed, the process of arraignment, disclosure and pretrial motion practice begins again and any harm arising from the earlier prosecutorial lapse is dissipated.
 
 [2]
 
 As long as the People furnish the required
 
 *169
 
 material within the requisite 15 days of the arraignment in the second proceeding, the purposes of CPL 700.70 are satisfied. At that point, the defense has adequate time to assess and prepare its case for suppression and the court can conduct any necessary hearings within the time frame contemplated by the Legislature. Applying the remedy of preclusion at this stage is gratuitous, serving no sound jurisprudential purpose.
 

 It is not persuasive to suggest that preclusion of the undisclosed evidence for all future purposes is required in order to deter prosecutorial disregard of CPL 700.70’s mandate. First, there is no support in either the case law or the statute’s legislative history for the notion that CPL 700.70’s preclusion provisions have some overarching deterrent purpose apart from that which is incidental to the primary goal of nullifying the harm resulting from delayed disclosure. Second, even if there were a secondary deterrent purpose, that purpose is adequately served by forbidding the use of the evidence in the proceeding in which the disclosure mandate was disobeyed. Extending the prohibition to other criminal proceedings, including those involving other crimes is, simply stated, judicial overkill.
 

 Notably, in this instance, the preclusion order that was issued in the first proceeding as a result of the People’s belated disclosure led to the permanent dismissal of the criminal charges involved in that proceeding
 
 (see,
 
 majority opn, at 166, n 8). As such, that situational penalty should certainly have been serious enough to constitute an effective deterrent. The fact that the People in this case were able to salvage the situation by identifying additional crimes is a fortuity occasioned in part by prosecutorial tenacity and creativity and in part by chance. In view of the broad joinder and double jeopardy provisions in CPL article 40, there is little practical risk that prosecutors will routinely "hold back” some of the available charges as insurance against the possibility of a CPL 700.70 preclusion order in the original proceeding. Hence, the deterrent value of extending the effect of such an order to whatever new proceedings might be commenced is, at best, minimal.
 

 I also take issue with the majority’s analysis and result because they blur the important distinction between substan
 
 *170
 
 tive suppression and procedural preclusion. Substantive suppression occurs when a piece of evidence is deemed inadmissible because of some constitutional or statutory wrong — such as the absence of probable cause, the violation of the right to counsel or the failure to comply with the sealing requirements of the wiretap statute — which affects the legality of the evidence itself. Where such a wrong has been found to have occurred, it makes sense to suppress the resulting evidence for all, or at least most, future purposes, since the wrong is complete and cannot be cured. The same cannot be said when the underlying wrong is the violation of a rule governing the conduct of the criminal proceeding itself. In such cases, the deleterious effect of the misconduct is limited to the proceeding in which it occurred and it is logically anomalous to extend the penalty beyond the confines of that proceeding.
 

 Finally, it is also illogical to distinguish, as the majority has done, between CPL 700.70 preclusion and the preclusion remedy contemplated in CPL 710.30 for late disclosure of statements and pretrial identification procedures
 
 (see,
 
 majority opn, at 166, n 8). The legislative goal of "orderly pretrial practice,” on which the majority itself relies
 
 (id.,
 
 at 165), is common to both provisions
 
 (see, e.g., People v O’Doherty, supra).
 
 Indeed, the present timing requirements of the two statutes’ disclosure rules were enacted simultaneously as part of a single act "to amend the criminal procedure law, in relation to effectpng] prompt disposition of pre-trial motions to suppress evidence”
 
 (see,
 
 L 1976, ch 194). The Sponsor’s "justification” statement made no distinction between the two statutes, noting that the timeliness requirements were necessary because
 

 "[a]t present, because of lack of communication or unawareness or carelessness on the part of the prosecutor, the defendant very often is presented for the first time on the eve of trial with a notice by the People that they intend to offer certain evidence against him. Defense counsel is then precluded from having a reasonable time or opportunity to make a motion to suppress”. (Mem of Assemblyman Herbert J. Miller, Bill Jacket, L 1976, ch 194.)
 

 The majority’s citation to
 
 People v Schulz (supra)
 
 and
 
 People v Basilicata (supra)
 
 as support for the suggestion that preclusion under CPL 700.70 was intended to be broader than
 
 *171
 
 preclusion under CPL 710.30 represents a misstatement of those cases’ holdings. First, both cases concern the implementation of the 15-day notice requirement, not the penalty for noncompliance. Second, and more importantly, the holding in both cases rested on specific differences in the "plain language” of CPL 700.70 and 710.30 and not on any perceived differences in the statutes’ underlying goals
 
 (People v Schulz, supra,
 
 at 150-151;
 
 People v Basilicato, supra,
 
 at 117-118). In fact, the Court conceded in both
 
 Schulz
 
 and
 
 Basilicato
 
 that the notice requirements of CPL 700.70 and CPL 710.30 "serve the same purpose” and stressed that it was the concrete language differences in the two statutes that led it to reject parallel construction
 
 (People v Schulz, supra,
 
 at 150-151;
 
 People v Basilicato, supra,
 
 at 117-118). Those specific language differences are, of course, not pertinent to the question presented here regarding the proper scope of the statutes’ respective preclusion remedies.
 

 Similarly, while this State’s "long-standing commitment to affording * * * protection against the insidious threat * * * of electronic surveillance” is indeed a strong one (majority opn, at 166, n 8), it is certainly no stronger than our well-established commitment to protecting citizens against tainted identifications or unconstitutionally obtained statements — the subjects to which CPL 710.30’s disclosure provisions pertain. Accordingly, if, as the majority holds, broad judicial policies are an appropriate factor to consider in determining the proper scope of a statutorily created remedy, those policies would seem to compel application of the majority’s new rule of permanent preclusion to CPL 710.30 cases as well as to cases that arise, like this one, under CPL 700.70.
 

 In summary, there is neither precedential support nor a sound reason in CPL 700.70’s language or purpose to prevent the People from introducing the previously precluded wiretap evidence in this new criminal proceeding. There may be some who find ground for annoyance at "the People’s effort to cure their initial [default] *
 
 * *
 
 by commencing a new prosecution” (majority opn, at 165). However, in my view, it is inappropriately and unnecessarily punitive to penalize the People for their procedural default in the first proceeding by applying CPL 700.70’s preclusion remedy to the present one involving new and separate charges. Accordingly, I vote to reverse the order affirming the conviction and direct a new trial, but I would not preclude the future use of the evidence derived
 
 *172
 
 from the previously disclosed wiretap warrants and applications.
 

 Judges Bellacosa, Smith and Ciparick concur with Chief Judge Kaye; Judge Titone dissents in part in a separate opinion in which Judges Simons and Levine concur.
 

 Order reversed, etc.
 

 [1]
 

 . The People conceded that eight counts in the second indictment were duplicative, and were granted permission to amend the indictment, which they accomplished on November 26,1991.
 

 [2]
 

 . Congress passed the Federal Communications Act in 1934. Section 605 of the Act prohibited unauthorized interception and disclosure of the contents of communication, and was held to cover wiretapping by State or Federal officials as well as private persons
 
 (Nardone v United States,
 
 302 US 379;
 
 Benanti v United States,
 
 355 US 96) and to apply to intrastate as well as interstate communications
 
 (Weiss v United States,
 
 308 US 321).
 

 [3]
 

 . 18 USC § 2516, for example, permits a State to authorize wiretapping within its borders if there exists an applicable State statute authorizing the principal prosecuting attorney of the State or a political subdivision to make application to a State court Judge of competent jurisdiction for an order authorizing or approving interception of communications in accordance with 18 USC § 2518.
 

 [4]
 

 . For example, 18 USC § 2516 requires State warrant applications to be brought solely by the "principal prosecuting attorney” before a State court Judge "of competent jurisdiction.” In New York, these duties are performed by the Attorney-General or District Attorney (CPL 700.05 [5]), before a Justice of the Supreme Court in which the eavesdropping warrant is to be executed (CPL 700.05 [4]). Thus, under article 700, a Toronto law enforcement agency cannot apply for permission to place a wiretap on a New York telephone, and a New York Justice cannot authorize execution of an eavesdropping warrant in Toronto.
 

 [5]
 

 . The felony offense of "eavesdropping” is defined at Penal Law § 250.05: "A person is guilty of eavesdropping when he unlawfully engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication.” "Unlawfully,” defined at Penal Law § 250.00 (8), means "not specifically authorized” pursuant to CPL articles 700 or 705.
 

 [6]
 

 . This notice provision was amended simultaneously with CPL 710.30, the notice provision for evidence of identification and statements (L 1976, ch 194, § 3). Strict time limits were imposed in both provisions to ensure that defendants were afforded "a reasonable opportunity to make a motion to suppress” an eavesdropping warrant or a statement or identification testimony
 
 (see,
 
 Bill Jacket, Mem of Sponsor Assemblyman Herbert J. Miller, May 12, 1976;
 
 People v Basilicata,
 
 64 NY2d 103, 118).
 

 [7]
 

 . Defendant’s contention that the Westchester County eavesdropping
 
 *165
 
 warrant was not sealed in accordance with CPL 700.50 (2)
 
 (People v Bialostok,
 
 80 NY2d 738) is unpreserved for our review.
 

 [8]
 

 . Contrary to the suggestion of the dissent, the effect of a CPL 710.30 violation is not implicated here. Whatever the similarities between that provision and CPL 700.70
 
 (see,
 
 dissenting opn, at 170-171), our decision today stands on our State’s longstanding commitment to affording citizens strong protection against the insidious threat to privacy of electronic surveillance (CPLR 4506; CPL art 700;
 
 People v Liberatore,
 
 79 NY2d 208, 213,
 
 supra,
 
 quoting
 
 People v Washington,
 
 46 NY2d 116, 124,
 
 supra),
 
 a concern not present under CPL 710.30.
 

 [9]
 

 . The first indictment was dismissed in the interests of justice under CPL 210.40 (1) and 210.20 (1) (i). Under CPL 210.20 (4), the absence of authorization of the court to resubmit constituted a bar to any further prosecution of that charge in Westchester County as to any count that was contained in the first indictment.
 

 To the extent defendant’s speedy trial claim turns on the claimed identity of counts between the first and second indictments
 
 (People v Osgood,
 
 52 NY 2d 37), that claim becomes moot upon dismissal of those counts for failure to obtain authorization to resubmit. The remainder of defendant’s speedy trial contentions are unpreserved or meritless.
 

 [1]
 

 . The majority has also elected to preclude the use of the Canadian wiretap evidence upon the retrial of this proceeding. For the reasons that follow, I would conclude that this application of CPL 700.70’s preclusion remedy is equally flawed.
 

 [2]
 

 . The same observation may be made in a case where a conviction has been reversed on appeal and the case has been remitted for further proceedings on the outstanding accusatory instrument. In such cases, "in the absence of express appellate court direction to the contrary,” "the criminal
 
 *169
 
 action is * * * restored to its pre-pleading status,” affording an occasion for a new arraignment and a new set of disclosure and motion deadlines (CPL 470.55 [2]).