OPINION OF THE COURT
Daniel J. Sullivan, J.
The defendant Carrasco has filed a written motion seeking *565 to suppress all the eavesdropping warrants involved in this case and any evidence derived therefrom. All of the remaining defendants orally joined in that motion. The necessary findings of fact and conclusions of law reached by this court are set out herein below.
On December 14, 1993, the District Attorney of Bronx County obtained an eavesdropping warrant to intercept and record electronic communications over the defendant Luis Polanco’s beeper (Target Beeper A) from a Justice of the Appellate Division, First Department (Joseph Sullivan, J.), on December 4, 1993. The application aforesaid was predicated upon the affidavit of Sergeant Aileen Welsh, a police officer assigned to narcotics investigations.
On February 23, 1994, wiretap orders were issued for Target Beeper A, target telephones 1 and 2 (by Justice Sullivan) and for target telephone 3 (by Westchester County Judge Leavitt) —orders predicated on the affidavit of Sergeant Welsh and naming some 20 individuals, coconspirators, etc.
By indictment No. 8253/94, filed November 9, 1994 (later superseded by indictment No. 8511/94), all defendants-movants were charged with conspiracy in the second degree and related crimes.
The judicial orders issued on February 23rd provided for written progress reports every 10 days; whereas the earlier orders directed the District Attorney to prepare one or more progress reports — oral or written in his discretion — during the life of the warrant and to transmit such reports to the court in person or via telephone. At this point, it may be noted that the instant motion by the defense only specifically attacks the December 14th and February 23rd Welsh affidavits for alleged failure to demonstrate probable cause for the issuance of the pertinent eavesdropping warrants — a defect allegedly "tainting” all subsequent orders.[1]
The defendants-movants’ claim is to the effect that the prosecution has failed in its obligation to turn over the eavesdropping warrants and accompanying applications within 15 days of arraignment (CPL 700.70). The arraignment on the initial indictment occurred November 14, 1994, and the turn *566 over, with one judicially approved exception, occurred on November 21st, the day upon which the arraignment on the instant indictment took place. Predicating the relevant argument upon the opinions in People v Liberatore (79 NY2d 208 [1992]) and People v Capolongo (154 Misc 2d 383 [Sup Ct, Bronx County 1992], appeal dismissed App Div, 1st Dept, Sept. 3, 1992), the claimed failure resulted in not turning over within 15 days of arraignment written progress reports currently under seal in the Appellate Division, First Department,[2] items which were incorporated by reference in the affidavits of May 19th and June 15, 1994, sworn to by Sergeant Welsh.
To begin with, this court notes that while the courts in other cases involving statutory notice applied the doctrine of "duplicative equivalents” (see, People v Cooper, 78 NY2d 476, 484 [1991]; see also, People v Gilman, 194 AD2d 737 [2d Dept 1993], lv denied 82 NY2d 718 [1993]; People v Martinez, 203 AD2d 212 [1st Dept 1994]; People v Bell, 214 AD2d 353 [1st Dept 1995]), the Court of Appeals has announced the need for strict compliance with the provisions of the pertinent statute (see, People v Schulz, 67 NY2d 144 [1986]). Nonetheless, it is now clear that that rule admits some limited exceptions for good cause (People v Liberatore, 79 NY2d 208 [1992], supra). Indeed, given a proper factual findings the Court has recognized that what it terms "untimely acquisition” in obtaining the documents to be turned over could constitute good cause for failure to meet the disclosure requirements of the pertinent statute (People v Capolongo, 85 NY2d 151, 163).
In Liberatore (supra), the Judge authorizing an eavesdropping warrant sealed a statement of a confidential informer, which statement was submitted in support of a warrant application. That order provided for the penalty of contempt of the court for unauthorized divulging of the information contained in the statement. The warrant application also included a police investigator’s affidavit, which affidavit indicated that the statement in question did not implicate the defendant who was a target of the eavesdropping order. The intermediate appellate court had concluded that suppression was required because of the constraint of Schulz (supra). New *567 York’s highest court recognized that the relevant provisions of law failed to provide guidance for determining whether the judicially sealed documents need to be disclosed. The Court went on to point out that a primary purpose of the notice requirement is to " 'alert * * * criminal defendants to the existence of evidence that [can] be introduced against them at trial so that a timely decision [can] be made about whether to file a motion to suppress such evidence’ ” (79 NY2d, at 213-214, supra). The Court further noted that the otherwise complete turnover of documents to the defendant at arraignment and that the general contents of the sealed statement were made known by the investigator’s affidavit. That tribunal then announced that resolution of the problem before it required a balancing between the notice and disclosure requirements and the competing need to protect the informant’s identity as well as to ensure the flow of information to the authorities combating crime. Because the sealed document had not been made part of the record on appeal, the Court of Appeals remitted the case to the intermediate appellate court to review the trial court’s determination respecting the questions of relevancy and probable cause. In reaching that decision, the Court also pointed out that where protection of the identity of the confidential informer is pertinent to establishing probable cause, the issuing Judge may hold an ex parte hearing with respect to the existence of the informant and the alleged communication from that person.
In the instant case, the defense has made no claim to the effect that the progress reports, sealing orders and papers contained factual assertions required in order to establish probable cause. Indeed, the specific claims of failure to demonstrate probable cause made in the present motion did not go beyond the order of February 23, 1994 — the order first requiring the prosecution to file written progress reports. In any event, the clear presence of probable cause in each of the applications now under attack moots the issue sought to be raised by defendants-movants (see, People v Packies, 156 Misc 2d 710 [Sup Ct, Suffolk County 1993]). Beyond that, the defense has had no apparent difficulty in filing the instant motion to suppress. Accordingly, as Liberatore (supra) points out, the purpose of the notice statute has been satisfied.
Probable cause aside, the defense seeks suppression for noncompliance with the statute on the theory that the "incorporation” language made the progress reports part of the pertinent applications. But, the statute provides no guidance *568 where sealed documents are concerned, as Liberatore (supra) notes. Here, a vast number of documents were turned over (about 3,000 pages), and probable cause did not depend upon the progress reports. Those documents ordinarily are not within the purview of the statute, and, in the circumstances of this case, are akin to what Packies (supra) describes as "attachments” not required to complete the defendant’s statutory entitlement.
As already observed, the relevant statute provided no guidance to the prosecution respecting how to deal with the instant problem. While CPL 700.70 operates to unseal eavesdropping applications and warrants, it does not address other sealed documents incorporated by reference in such applications. From the prosecution’s perspective, a turnover of the progress reports might have constituted an act of contempt. Given those circumstances, the "untimely acquisition” here is seemingly the good cause as envisioned in Capolongo (supra). On the other hand, the defense, which made no inquiry concerning these reports, filed the instant motion with alacrity in the apparent belief that it would prevail given the strict compliance rule applicable in this area of the law. Yet the fact is that the documents turned over were obviously sufficient to give rise to the instant comprehensive suppression motion.
Before leaving this subject, it is also noteworthy that, with a singular exception, the references to progress reports in the moving papers were to footnotes in the Welsh affidavits. In those references, the progress reports in question were summarized in "reminders” to the issuing court of the contents of those documents. An affirmation filed by one of the prosecutors suggests that all conversations intercepted and reported in the pertinent progress reports may well have been reiterated in the applications in question. If such was the case, the turnover was complete at the one time. Then, no "duplicative equivalent” defect within the meaning of Schulz (supra) would exist.
In closing, this court directs the prosecutors to seek forthwith production of the relevant documents from the appellate court and thereafter to turn them over to the defense. Upon inspection of those documents, the defendants-movants may reargue the instant motion in the seemingly unlikely event that those items contain data which would impact the findings of probable cause that have been made herein by this court. Of course, if such a motion is made and a concern about *569 revealing the identity of the informant arises, this court will address that subject in an ex parte in camera hearing.
For the reasons assigned above, the motion to suppress the eavesdropping orders and evidence derived therefrom is denied.
[Portions of opinion omitted for purposes of publication.]

. Between March 24, 1994 and October 20, 1994, Justice Joseph Sullivan issued a number of both extension and original eavesdropping orders. Additionally, five other Justices of the Appellate Division, First Department, issued extension orders, and two of them issued orders amending existing orders.

. In an affirmation filed by a prosecutor, he states that during a telephone conversation he initiated on April 7, 1995, Justice Joseph Sullivan confirmed that the progress reports and other filings are under seal.