OPINION OF THE COURT
Louis B. York, J.
This is a motion for a preliminary injunction seeking to suppress under CPLR 4506 certain testimony at an administrative hearing. Because the court finds that the conditions for obtaining such a preliminary injunction have been met, the court grants the motion.
FACTUAL BACKGROUND
Howard Ruskin, a detective of the New York City Police Department for the past eight years and a member of that Department for over 15 years, is currently the object of Police Department disciplinary proceedings seeking severe sanctions up to and including expulsion. An administrative hearing has been temporarily stayed by this court pending this decision.
An individual named Gary Lowery sold allegedly illegal discounted airline tickets from his home in Louisiana. The transactions were usually recorded by telephone. Despite petitioner Ruskin’s instruction to Lowery to use a stationary corded phone, Lowery continued to use his cordless phone while defendant Ruskin used a corded phone. At some point, a neighbor of Lowery’s intercepted and recorded Lowery’s telephone transactions. He brought the recordings to the FBI, which registered him as a paid informant and directed him to continue his surveillance. These warrantless interceptions and recordings eventually reached the conversations with Detective Ruskin. Lowery was eventually arrested. Ruskin claims that in order to obtain a lighter sentence, Lowery has agreed “to testify that every one of his customers had known that the tickets they were buying were obtained fraudulently from the airlines.” Detective Ruskin was indicted in the Louisiana District Court for violation of the US Constitution and laws. The Louisiana District Court suppressed the recordings but the Circuit Court of Appeals reversed and remanded, reasoning that even though Ruskin had told Lowery not to use a cordless phone, because Ruskin knew that Lowery was using such a phone, he had no reasonable expectation of privacy.
*192 Immediately after Ruskin’s indictment, the current disciplinary proceeding was brought against him by the New York City Police Department. Faced with the Louisiana District Court’s decision on the scheduled date of the disciplinary hearing, the prosecutor announced that he intended to call four witnesses at the trial: Lowery, FBI Agent Wescott, Ramona Ridge, a former customer of Lowery, who introduced Detective Ruskin to him and a case officer from the Internal Affairs Bureau who has been monitoring the Federal criminal action.
CONTENTIONS
Ruskin’s preliminary injunction motion, as well as the underlying proceeding, seeks to suppress these tape recordings as the fruits of a violation of CPLR 4506 which prohibits the introduction into evidence of illegally recorded wiretaps.* The respondent Police Commissioner counters that Ruskin has no standing to invoke CPLR 4506 because (1) the information regarding these witnesses was obtained from wiretaps other than those of Ruskin’s conversations, and (2) these wiretaps were not illegal under Louisiana law where they took place.
DISCUSSION
Preliminarily, it is noted that Ruskin had to bring this motion before this court. Under CPLR 4506, where, as here, no eavesdropping warrant has been issued, a motion must be made before a Justice of the Supreme Court of the District where the hearing is being held to suppress such evidence. CPLR 4506 states in pertinent part:
“§ 4506. Eavesdropping evidence; admissibility; motion to suppress in certain cases.
“1. The contents of any overheard or recorded communication, conversation or discussion, or evidence derived therefrom, which has been obtained by conduct constituting the crime of eavesdropping, as defined by section 250.05 of the penal law, may not be received in evidence in any trial, hearing or proceeding before any court or grand jury, or before any legislative committee, department, officer, agency, regulatory body, or other authority of the state, or a political subdivision thereof; provided, however, that such communication, conversation, discussion or evidence, shall be admissible in any civil or criminal trial, hearing or proceeding against a person who has, or is alleged to have, committed such crime of eavesdropping.
*193 “2. As used in this section, the term ‘aggrieved person’ means:
“(a) A person who was a sender or receiver of a telephonic or telegraphic communication which was intentionally overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver, by means of any instrument, device or equipment; or
“(b) A party to a conversation or discussion which was intentionally overheard or recorded, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment; or
“(c) A person against whom the overhearing or recording described in paragraphs (a) and (b) was directed.
“3. An aggrieved person who is a party in any civil trial, hearing or proceeding before any court, or before any department, officer, agency, regulatory body, or other authority of the state, or a political subdivision thereof, may move to suppress the contents of any overheard or recorded communication, conversation or discussion or evidence derived therefrom, on the ground that:
“(a) The communication, conversation or discussion was unlawfully overheard or recorded; or
“(b) The eavesdropping warrant under which it is overheard or recorded is insufficient on its face; or
“(c) The eavesdropping was not done in conformity with the eavesdropping warrant.”
Whether in a situation such as this the law of the forum applies or the law where the event took place remains an open question at the appellate level. Our Court of Appeals has addressed this issue without deciding it. “While the law may be clear as to wiretaps authorized and recorded within the boundaries of this State * * * where interception of a telephone conversation originating in New York is accomplished on foreign soil, by foreign authorities pursuant to foreign law, what application does our State law have when New York prosecuting authorities later seek to introduce that evidence in a New York Court? Our statutory scheme is silent on this point” (People v Capolongo, 85 NY2d 151, 160 [1995]).
Nevertheless, there is a very strong public policy favoring the maintenance of privacy rights of citizens of this State and the deterrence of conduct infringing upon those rights. While the Court of Appeals has not ruled on this issue it has commented on it.
*194 “[0]ur strong public policy of protecting citizens against the insidiousness of electronic surveillance by both governmental agents and private individuals (CPLR 4506; CPL art 700; People v Liberatore, 79 NY2d 208, 213 * * *).
“New York State has, therefore, responded to the problems raised by electronic surveillance with greater protection than is conferred under Federal law, and continues to assert this strong public policy, through evolving legislation, as technology advances.” (85 NY2d 151, 160, supra.)
Given the strength of New York’s antipathy to eavesdropping, it would hardly be surprising that when the Court of Appeals faces this problem squarely, it will opt for applying New York law as to the admissibility of recorded eavesdropped conversations. This court determines that since the admissibility of evidence is a procedural question, the law of New York, the forum State, applies. (United States Mtge. & Trust Co. v Ruggles, 258 NY 32, 40 [1932]; Matter of Nichol, 3 Misc 2d 898, 907 [Sup Ct, NY County 1956] [New York law applied to determine the admissibility of evidence in action relating to trust indenture executed in New Jersey which specifically required that it be interpreted under New Jersey law].)
The law in New York is clear that whether an illegal interception of a phone is connected by wire or by radio waves, recording of that interception cannot be used as evidence. (Sharon v Sharon, 147 Misc 2d 665 [Sup Ct, Nassau County 1990].) This includes such evidence sought to be submitted at an administrative hearing. (Matter of Dampman v Morgenthau, 158 Misc 2d 102 [Sup Ct, NY County 1993], appeal dismissed 203 AD2d 983 [1st Dept 1994].) It is established law that the “fruit of the poisoned tree” doctrine prevents any evidence that illegally obtained evidence led the authorities to is also excluded. (Matter of Finn’s Liq. Shop v State Liq. Auth., 24 NY2d 647 [1969], cert denied 396 US 840 [1993].) From the parties’ submissions, it appears to this Judge that but for the illegal interceptions, the transaction in question would not have been discovered.
This court holds that the petitioner Ruskin has standing to attack the illegal recordings. While he was not a party to all the illegal interceptions, Ruskin was “a sender or receiver of a telephonic” transmission which was recorded by someone without the receiver’s or sender’s consent. (CPLR 4506 [2] [a].) Just because Ruskin was not a sender or receiver of every message, he is not deprived of standing. The interception of his conversations establishes him as an aggrieved person, the basis *195 for standing under CPLR 4506. Thus, he has satisfied the requirement that his claim is likely to succeed on the merits.
The three other standards for the issuance of a preliminary injunction once the probability of success on the merits has been achieved are: (1) no adequate remedy at law, (2) irreparable harm, and (3) the balance of hardships tips favorably in petitioner’s favor. These requirements have been met. (Seitzman v Hudson Riv. Assocs., 126 AD2d 211 [1st Dept 1987]; see also, Siegel, NY Prac § 328 [2d ed 1991].) A money judgment cannot replace the unlawful violating of the petitioner’s privacy or petitioner’s potential removal from the police force because of the receipt of unlawful evidence. The potential irreparable harm is established by the permanent damage to petitioner’s reputation which cannot be erased by any permanent injunction or even by a money judgment. The unsuppressed information will be available for everyone to see. Finally, the balance of equities is decidedly in petitioner’s favor. Keeping petitioner on the police force for the limited period between the issuance of the preliminary injunction and the decision on the permanent injunction is the preferred approach. The harm to the petitioner resulting from the violation of his privacy, the possible effect on his reputation and even a temporary dismissal from the police force significantly outweigh the temporary inconvenience to the respondent Police Department, especially where the available information indicates that this 15-year veteran has an exemplary and unblemished record of service.
DECISION AND ORDER
Since the court is presently persuaded that all of the pertinent evidence in this action is derivative of telephone taps illegal under the New York Penal Law and would not have been discovered otherwise, it is therefore ordered that until further order of the court, the motion for a preliminary injunction is granted; and it is further ordered that until further order of the court, all recorded telephone conversations pertaining to discounted airline tickets between Lowery and anyone else and all information derived therefrom including, but not limited to, testimony of Lowery, FBI Agent Daniel Wescott, Ramona Ridge and anyone from the Police Department’s Internal Affairs Unit who has been monitoring this case may not be admitted in evidence at petitioner’s disciplinary hearing.

 Warrantless interceptions of telephone calls without the permission of one of the parties constitute the crime of eavesdropping under Penal Law § 250.05.