# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 6
The People &c.,
     Respondent,
    v.
Michael Myers,
     Appellant.

Philip Rothschild, for appellant.
Kenneth H. Tyler, Jr., for respondent.
New York State Association of Criminal Defense Lawyers, amicus curiae.

GARCIA, J.:

While monitoring a wiretap in an investigation unrelated to this case, law enforcement officials intercepted a call that originated from a county jail. Defendant joined the call and made statements suggesting his involvement in a fatal hit-and-run accident.

Local police were alerted to the call and thereafter obtained a recording of the call from the jail. Defendant was later charged in connection with the hit-and-run. The People introduced the jail recording as evidence at trial without providing notice within fifteen days of arraignment pursuant to CPL 700.70. This was improper. A communication intercepted via wiretap is not exempted from statutory notice procedures merely because the same communication was incidentally captured on a separate, consensual recording. For that intercepted communication or any evidence derived therefrom to be admissible at trial, the prosecution must follow the CPL's notice procedures. Accordingly, because the jail recording evidence was derived from an intercepted communication, we reverse.

I.

In October 2015, the Syracuse Police Department began investigating a fatal hit-and-run automobile accident. Police identified the suspect car and determined it was registered to D.H., defendant's cousin. When police interviewed D.H., he reported that his girlfriend was borrowing the car at the time of the crash. D.H.'s girlfriend told police that the car was stolen prior to the accident.

At about the same time, in an unrelated investigation, the New York Attorney General's Office obtained a warrant to wiretap the phone of A.C. The wiretap intercepted a call from A.J., an inmate at the Onondaga County Justice Center (OCJC). A.J. initially called D.H., who added A.C. to the call. While A.J., D.H., and A.C. were speaking, D.H. asked A.C. to put defendant on the phone. Defendant then made statements about the hit-and-run accident. A Syracuse Police detective monitoring the Attorney General's wiretap

heard the conversation, recognized defendant's voice, and notified the detectives working the hit-and-run case. Syracuse Police then obtained a recording of the call from OCJC.

A grand jury indicted defendant on a single count of leaving the scene of an accident without reporting (Vehicle and Traffic Law § 600 [2] [a]). The People produced the recording obtained from OCJC to defendant in discovery but did not furnish defendant with a copy of the wiretap warrant and underlying application within the fifteen-day period prescribed by CPL 700.70. Several months after defendant was arraigned, the People informed defendant by letter that the police were "alerted" to the call by the wiretap. Defendant moved to preclude the call from evidence on the grounds that the People failed to adhere to the CPL 700.70 notice procedure.

County Court denied defendant's motion, holding that the jail recording was not an "intercepted communication" within the meaning of CPL 700.05 because at least one party consented to the recording. The tape was entered into evidence and defendant was convicted. The Appellate Division affirmed, holding that the jail recorded the call with the implied consent of at least one of the participants, and therefore the call was not an "intercepted communication" and "no warrant was required to record the conversation . . . and the People were not required to comply with CPL 700.70 before using the recording at defendant's trial" (198 AD3d 1373, 1373-1374 [4th Dept 2021]).

A Judge of this Court granted defendant leave to appeal (38 NY3d 952 [2022]).

II.

Criminal Procedure Law article 700 prescribes the procedures governing eavesdropping warrants, commonly referred to as wiretaps. We require strict—indeed,

"scrupulous"—compliance with the provisions of this statute, and the prosecution has the burden of establishing such compliance (*see People v Capolongo*, 85 NY2d 151, 159-160 [1995]). In imposing this rigorous standard, we recognize that "[t]he insidiousness of electronic surveillance threatens the right to be free from unjustifiable governmental intrusion into one's individual privacy to a far greater extent than the writs of assistance and general warrants so dreaded by those who successfully battled for the adoption of the Bill of Rights" (*People v Schulz*, 67 NY2d 144, 148-149 [1986]). Our State Constitution contains explicit protections against the unreasonable interception of telephonic communications (NY Const art. I, § 12), and "our interpretation of article 700 must be sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect" (*Schulz*, 67 NY2d at 148 [alterations omitted]).

Pursuant to CPL 700.70, the "contents of any intercepted communication, or evidence derived therefrom[,]" cannot be used at trial unless the People, "within fifteen days after arraignment and before the commencement of the trial, furnish the defendant with a copy of the eavesdropping warrant, and accompanying application, under which interception was authorized or approved." The People argue, and the Appellate Division held, that the wiretap was not an intercepted communication because A.J. consented to the recording of the call by OCJC. We disagree.

As a preliminary matter, our precedent makes clear that the recording of the call made by OCJC and admitted into evidence at trial is not itself an "intercepted communication" within the meaning of CPL 700.05. An "intercepted communication" is defined, as relevant here, as "a telephonic . . . communication which was intentionally

overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver" (CPL 700.05 [3] [a]). In *People v Diaz* (33 NY3d 92 [2019]), we held that "detainees, informed of the monitoring and recording of their calls, have no objectively reasonable constitutional expectation of privacy in the content of those calls" (*id.* at 95). In such circumstances, detainees "impliedly consent to the 'taping' of those conversations" (*People v Williams*, 35 NY3d 24, 46 [2020]). The recording made by OCJC was made with the consent of A.J.—the sender—and accordingly was not an "intercepted communication" (*see* CPL 700.05). OCJC could "share the recording[] with law enforcement officials and prosecutors[] without violating the Fourth Amendment" (*Diaz*, 33 NY3d at 95). That does not end our inquiry, however. The issue here is whether the recorded conversation obtained from OCJC was "derived" from an "intercepted communication."

Guided by the principle that "article 700 and all its integral parts [should] not be treated lightly or with cavalier disregard" (*Schulz*, 67 NY2d at 149 [internal quotation marks and alterations omitted]), we interpret the statute to require an independent consent analysis for the eavesdropping conducted pursuant to the warrant. The wiretap and the recording made by OCJC are separate and distinct pieces of potential evidence, and the fact that they captured the same information does not affect this analysis. Indeed, "it is not unusual for evidence to be inadmissible for one reason, and yet, admissible under a different theory" (*People v Simmons*, 86 Misc 2d 737, 744 [Sup Ct, New York County 1976], *affd*, 54 AD2d 624 [1st Dept 1976] [admitting into evidence consensual recordings

of phone conversations while suppressing recordings of the same conversations obtained pursuant to an unlawful wiretap]).

Just as the existence of the wiretap does not convert the jail recording into an "intercepted communication," the consent given to OCJC does not convert the wiretap into a consensual recording and vitiate the protections of CPL article 700. The fact that the sender consented to recording by the detention facility has no bearing on the status of the communication overheard on the wiretap. Authorization for the Attorney General's Office to listen to and record the call came from the eavesdropping warrant, not A.J.'s consent. When the Attorney General's Office intercepted the call, it was "intentionally . . . recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver" (CPL 700.05 [3] [a]). The wiretap was therefore an "intercepted communication" within the meaning of CPL 700.05.

The Attorney General's Office was permitted to share recordings from the wiretap with appropriate law enforcement officials pursuant to CPL 700.65, but use of that intercepted call or any evidence "derived therefrom" at trial was subject to the notice requirement of CPL 700.70. Whether the evidence obtained from OCJC is subject to that requirement therefore depends on whether the jail recording evidence was "derived" from the intercepted communication. It was.

The substance of the wiretap recording informed law enforcement that the same conversation had been recorded by OCJC, leading the Syracuse Police directly to the recording that the People used as evidence at defendant's trial. In listening to the wiretap, a detective heard incriminating statements about the hit-and-run, identified defendant as

the declarant, and directed authorities to the OCJC recording. Clearly, the OCJC call is evidence derived from the wiretap. Moreover, it is not certain that police investigating the hit-and-run would otherwise have discovered the call—indeed, the inmate who placed the call had no apparent connection to the hit-and-run incident. Because the wiretap was an "intercepted communication," the People's failure to timely furnish defendant with a copy of the eavesdropping warrant and underlying application precluded the admission of the wiretap recording and any evidence derived therefrom—namely, the jail recording—into evidence at trial (CPL 700.70).

Accordingly, the order of the Appellate Division should be reversed, defendant's motion to preclude pursuant to CPL 700.70 granted and a new trial ordered.

Order reversed, defendant's motion to preclude pursuant to CPL 700.70 granted and a new trial ordered. Opinion by Judge Garcia. Acting Chief Judge Cannataro and Judges Rivera, Wilson, Singas and Troutman concur.

Decided February 9, 2023