================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 71
The People &c.,
          Respondent,
        v.
Anthony Badalamenti,
          Appellant.


          Marianne Karas, for appellant.
          Jason R. Richards, for respondent.


FAHEY, J.:

          We hold that the definition of consent, in the context

of "mechanical overhearing of a conversation" pursuant to Penal

Law § 250.00 (2), includes vicarious consent, on behalf of a

minor child.

          Our decision sets out a narrowly tailored test for

- 1 -

vicarious consent that requires a court to determine (1) that a parent or guardian had a good faith belief that the recording of a conversation to which the child was a party was necessary to serve the best interests of the child and (2) that there was an objectively reasonable basis for this belief.

I.

In 2008, defendant lived with his girlfriend and her five-year-old son on the second floor of a two-family house. The owners lived on the main floor. Through her ceiling, the landlady on several occasions heard defendant screaming at the child, and the child crying and pleading. When the landlady told defendant that it was not acceptable to "beat on children," he responded by saying, "I can beat the hell out of him if I want if he lies." This conversation was not reported to any authority.

The boy's father had visitation rights, and in the spring of 2008 he noticed that when it was time for his son to return home after a visit, the child would start crying and refuse to get ready. On May 4, 2008, after a conversation with his son, the father told the mother he would not return the child to her. She contacted the police, who appeared at the father's home and required that he release the child to the mother's custody.

On May 6, 2008, the father tried to reach the mother on her cellphone, using his own cellphone. He called several times without reaching her; the calls went directly to voicemail.

Finally, a call went through, but no-one said anything to the father. However, the line was open, and the father was able to hear what was occurring in defendant's apartment. Defendant and the child's mother were yelling at the child, who was crying. Defendant threatened to beat him and punch him in the face. The father, using another cellphone, tried to call the landline telephone in the apartment, but no-one answered.

At this point, the father decided to record what he was hearing using a voice memo function on his cellphone. On the recording, which was played to the jury at defendant's trial, defendant told the five-year-old boy that he was going to hit him 14 times for lying and that this would hurt more than a previous beating. The father saved the recording on his cellphone. He did not contact the police.

On October 22, 2008, defendant's landlady heard screaming and crying in the apartment above her. The child (now six years old) was begging "Anthony" to stop hurting him. She also heard a slapping sound. On October 31, 2008, the landlady again heard the child screaming for "Anthony" to stop hurting him, and she and her daughter heard what sounded like a strap being used to beat someone. At his wife's insistence, the landlord called the police.

Police officers rang the doorbell of the upstairs apartment, knocked on the door, and called the landline telephone. No-one answered. The police broke the door down and

arrested defendant and the child's mother.  The child was treated at a medical center; he had extensive bruising and swelling on the lower part of his body, including older bruises that were seven to ten days old.  The child told an emergency room doctor that his mother had hit him, with a belt, as punishment for lying.  At the precinct, the mother gave the police consent to retrieve two belts from the apartment.

From November 1, the child lived with his father.  The father informed the police of the recording he had saved on his cellphone, and the police preserved it on a compact disc.

## II.

Defendant was charged with four counts of assault in the second degree, two counts of criminal possession of a weapon in the fourth degree, and one count of endangering the welfare of a child.  In pretrial proceedings, the People sought, over defendant's objection, permission to introduce the father's recording into evidence at trial.  Defendant protested that the making of the recording amounted to eavesdropping, prohibited by Penal Law § 250.05, and that the recording was therefore inadmissible pursuant to CPLR 4506 (1).  The People also put the defense on notice that they would be seeking a charge instructing the jury that defendant had "a duty to care for the child and to prevent harm from happening to him," and would be arguing that defendant had violated such a duty.  Defendant objected that this would change the theory of the case from what had been presented

in the indictment.

The trial court allowed the recording to be admitted
into evidence, with respect to the endangering the welfare of a
child count, holding that the father's action was not
eavesdropping, and that, even if it were, it was justifiable on
the basis of the "duty of the father to take some action once he
heard [defendant's] conduct."  The court relied on People v Clark
(19 Misc 3d 6 [App Term, 2d Dept, 2d & 11th Jud Dists 2008], lv
denied 10 NY3d 861 [2008]), in which the Appellate Term permitted
the admission of a recording based on a theory of vicarious
consent.

At trial in June 2009, the jury heard testimony from
the child (see CPL 60.20), the father, the owners of the two-
family house, the emergency room doctor, the child's first-grade
teacher, and detectives.  The child's testimony regarding the
events of October 31 was that his mother and defendant took turns
beating him with a belt.  The landlady recounted how she had
heard the child begging "Anthony" to stop hurting him.

The May 6, 2008 recording was played for the jury, with
the instruction that the jury could consider it only as evidence
concerning the endangering the welfare of a child count.  The
father testified concerning the circumstances leading to the
recording.  Asked whether he had been afraid for his son's safety
when he was listening to what was occurring in the apartment, he
responded that he had not thought that defendant would physically

harm his son, but was afraid for the boy to the extent that defendant's "tone was getting louder and louder."  The jury also saw photographs of the child's injuries, and the belts were introduced into evidence.

Defendant testified.  He told the jury that he had never struck the child and asserted that the child's mother had carried out the beatings.  Defendant insisted that his recorded threats addressed to the child were idle and intended to prevent the child's mother from hitting him.  With regard to the events of October 31, defendant testified that the child's mother had spanked the child on her own, that he had not heard the beating or, later, the arrival of the police because he had headphones on, and that his involvement in the incident had been limited to consoling the child and treating his wounds.

Before summations, the prosecution formally requested an accessorial liability charge.  Defendant objected that such a charge "reframe[d] the indictment," altering "the nature and theory of the prosecution's case."  The trial court, however, instructed the jury that

> "there are . . . circumstances where an
> individual's criminal liability may be
> predicated on that individual's failure to
> act or an omission to act provided that the
> individual shared the same state of mind as
> the actor. . . .
>
> "[I]n order for you to hold this defendant
> criminally liable under this definition of
> accessorial liability, meaning the
> omission-to-act theory of liability, you must
> find that the People prove beyond a

reasonable doubt that the defendant failed to act or omitted to perform an act that he was legally required to perform because of his parental or parental equivalent relationship with the victim, and that he did so with the state of mind required for the commission of the offense."

The jury found defendant guilty of all charges, except one assault charge that corresponded to the beating alleged to have occurred on October 22. Upon conviction, the trial court sentenced defendant to an aggregate term of seven years' imprisonment, to be followed by three years' postrelease supervision.

On appeal, defendant argued, as pertinent here, that the recording amounted to eavesdropping in violation of Penal Law § 250.05, because no party to the conversation consented to the recording, so that the evidence was inadmissible under CPLR 4506, and that the charge on accessorial liability was given in error.

The Appellate Division affirmed the trial court's judgment (124 AD3d 672 [2d Dept 2015]). The court adopted the vicarious consent doctrine, as recognized with respect to the federal wiretap statute by the Sixth Circuit in Pollock v Pollock (154 F3d 601 [6th Cir 1998]), and in New York by the Appellate Term in People v Clark.

> "While . . . Penal Law § 250.05 serves the strong public policy goal of protecting citizens from eavesdropping, we are not persuaded that the New York Legislature intended to subject parents to criminal penalties when, out of concern for the best interests of their minor child, they record that child's conversations. Given the

similarity between the federal wiretap
statute and New York's eavesdropping statute,
and recognizing that the vicarious consent
exemption is rooted on a parent's need to act
in the best interests of his or her child, we
deem it appropriate to adopt it as an
exemption to Penal Law § 250.05.

"Here, the People sufficiently demonstrated
that the father had a good faith, objectively
reasonable basis to believe that it was
necessary for the welfare of the infant to
record the conversation, such that he could
consent to the recording on the infant's
behalf.  Accordingly, the vicarious consent
exemption applies, and admission of the
subject recording was not barred by CPLR
4506."  (124 AD3d at 674 [internal quotation
marks and citations omitted].)

With respect to the jury charge, the Appellate Division

held that "under no rational view of the evidence could the jury

have convicted the defendant based upon any uncharged theory," so

that "the error concerning the charge was harmless" (id. at 675).

A Judge of this Court granted defendant leave to appeal

(25 NY3d 949 [2015]).  We now affirm.

III.

Generally, in New York,

"[t]he contents of any overheard or recorded
communication, conversation or discussion, or
evidence derived therefrom, which has been
obtained by conduct constituting the crime of
eavesdropping, as defined by section 250.05
of the penal law, may not be received in
evidence in any trial, hearing or proceeding
before any court or grand jury" (CPLR 4506
[1]).

Penal Law § 250.05, in turn, provides that "[a] person

is guilty of eavesdropping when he unlawfully engages in

wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication." Eavesdropping is a class E felony.

Wiretapping is defined as "the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment" (Penal Law § 250.00 [1]). " 'Mechanical overhearing of a conversation' means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment" (Penal Law § 250.00 [2]).[1]

The father's actions on his cellphone did not constitute "wiretapping" because, with respect to the telephonic communication he recorded, he was "a sender or receiver thereof" (Penal Law § 250.00 [1]). Defendant argues, however, that the father's actions amounted to the crime of "mechanical overhearing of a conversation" (Penal Law §§ 250.05, 250.00 [2]), and that the recording was consequently inadmissible. Defendant points out that the father deliberately used a device to record a conversation between defendant, the child, and his mother,

---

[1]     "[I]ntercepting or accessing of an electronic communication" is defined to exclude transfer of "any telephonic or telegraphic communication" (Penal Law § 250.00 [5] [a]; see Penal Law § 250.00 [6]).

without obtaining the consent of any of those three people, and without being present at, or a party to, the conversation.  We agree that the father's actions matched the statutory elements.  Certainly, mechanical overhearing of a conversation or "bugging" has been interpreted to include the interception of face-to-face communications by means of a recording device on a telephone (see People v Basilicato, 64 NY2d 103, 114 [1984] [holding that a recording was a mechanical overhearing of a conversation when a device designed for authorized wiretapping enabled tape recording of a face-to-face conversation because the receiver was left off the hook]; see also People v Basilicato, 98 AD2d 124, 126 [3d Dept 1983] [noting that the recording device was installed "in the telephone itself"]).  This, however, does not end our analysis.

        The analytical core of this case is consent.  The father did not ask for or obtain the consent of any party to the conversation.  Nor is there evidence in the record that the mother intentionally manipulated her cellphone so that the father's call would go through.  We conclude, however, that the father gave consent to the recording on behalf of his child.

        The principle of vicarious consent that we adopt originates in federal case law.  The federal wiretapping law, like the New York statutes we interpret here, contains an exception for the interception of a communication with the consent of one party.  "It shall not be unlawful under this

chapter . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or <u>where one of the parties to the communication has given prior consent to such interception</u> unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State" (18 USC § 2511 [2] [d] [emphasis added]).

In <u>Thompson v Dulaney</u> (838 F Supp 1535 [D Utah 1993]), in the context of a custody hearing, the United States District Court for the District of Utah held that the parent or guardian of minor children can give vicarious consent, on behalf of the children, to the recording of conversations to which the children are a party, on the ground that "as long as the guardian has a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of the phone conversations, vicarious consent will be permissible in order for the guardian to fulfill her statutory mandate to act in the best interests of the children" (<u>id.</u> at 1544). The children in <u>Thompson</u> were three and five years old; the conversations were with their father.

In 1998, the Sixth Circuit adopted the rationale of <u>Thompson</u> in an influential decision, <u>Pollock v Pollock</u> (154 F3d 601 [6th Cir 1998], <u>reh en banc denied</u>, 1998 US App LEXIS 29672 [6th Cir 1998], <u>reh denied</u>, 1998 US App LEXIS 29673 [6th Cir

1998]).  In <u>Pollock</u>, during a custody dispute, a mother placed a device on a telephone in her home in order to record her 14-year-old daughter's conversations with her stepmother.  The Sixth Circuit, emphasizing the elements of parental good faith and best interests of the child, held that "as long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording" (<u>Pollock</u>, 154 F3d at 610).[2]

The Sixth Circuit noted that the vicarious consent "doctrine should not be interpreted as permitting parents to tape

---

[2]    Subsequently, the <u>Pollock</u> doctrine has been adopted by state courts throughout the United States, including high courts interpreting state statutes (<u>see</u> <u>Griffin v Griffin</u>, 2014 ME 70, 92 A3d 1144, 1150-1153 [2014]; <u>Commonwealth v F.W.</u>, 465 Mass 1, 6-14, 986 NE2d 868, 871-877 [2013]; <u>State v Whitner</u>, 399 SC 547, 552-556, 732 SE2d 861, 863-865 [2012]; <u>State v Spencer</u>, 737 NW2d 124, 130-134 [Iowa 2007]; <u>Alameda v State</u>, 235 SW3d 218, 222-223 [Tex Crim App 2007]).  Massachusetts has extended the doctrine "to allow a nonparent, and specifically, the adult half-sister of the victim, to vicariously consent to the oral communications of her half-sister" (<u>F.W.</u>, 986 NE2d at 875).

State high courts declined to adopt a vicarious consent doctrine in <u>State v Christensen</u> (153 Wash2d 186, 193-194, 102 P3d 789, 792 [2004] [interpreting state statute with <u>all</u>-party consent, as opposed to one-party consent, requirement]) and, before <u>Pollock</u> was decided, in <u>W. Va. Dep't of Health & Human Res. ex rel. Wright v David L.</u> (192 WVa 663, 670-671, 453 SE2d 646, 653-654 [W Va 1994]; <u>see also</u> <u>State v Williams</u>, 215 W Va 201, 207, 599 SE2d 624, 630 [2004] [rejecting defendant's argument that a custodial parent of a minor child <u>must</u> give consent on the child's behalf to the interception of a communication between that child and a third party]).

any conversation involving their child simply by invoking the magic words: 'I was doing it in his/her best interest,' " but insisted that "there are situations, such as verbal, emotional, or sexual abuse by the other parent, that make such a doctrine necessary to protect the child from harm" (Pollock, 154 F3d at 610).  The Pollock court considered the motive or purpose of the guardian or parent in recording the conversation to be a significant factor in determining whether he or she could consent on behalf of his or her minor child.  Notably, in Pollock, the Sixth Circuit reversed the lower court's grant of summary judgment to the mother and remanded, because it found that "questions of material fact" existed regarding the mother's "motivation in taping the conversations" (Pollock, 154 F3d at 612).

In New York, the Appellate Term adopted Pollock's vicarious consent doctrine in People v Clark (19 Misc 3d 6).  In that case, the mother of an eight-year-old boy with autism, who had noticed that her son was coming home from school with bruises, placed a recording device in her son's backpack, and recorded evidence of a "conversation" at which the boy was present, inculpating his personal bus matron.  The bus matron moved to suppress the recording on the ground that it had been recorded without her consent or the consent of any other party present, in violation of Penal Law § 250.05.  The Appellate Term adopted Pollock and held that the mother consented to the

recording on behalf of her child, "since she demonstrated a good faith, objectively reasonable basis to believe that it was necessary for the welfare of her son to make said recording" (Clark, 19 Misc 3d at 9). The Appellate Term "stress[ed] that [its] decision . . . should not be interpreted as holding that a minor alone can never provide the requisite consent to record a conversation at which he or she may be present or as permitting parents to tape any conversation involving their child" (Clark, 19 Misc 3d at 9-10).[3]

This Court agrees with the approach taken by the Sixth Circuit in Pollock, and by the Appellate Term in Clark, as applied below. There is no basis in legislative history or precedent for concluding that the New York Legislature intended to subject a parent or guardian to criminal penalties for the act of recording his or her minor child's conversation out of a genuine concern for the child's best interests. By contrast, the vicarious consent doctrine recognizes the long-established principle that the law protects the right of a parent or guardian to take actions he or she considers to be in his or her child's best interests. Yet it also recognizes important constraints on that right, by requiring that the parent or guardian believe in good faith that it is necessary for the best interests of the

---

[3]     One Justice dissented on the ground that "[n]othing in the statutory language or legislative history makes any provision for such consent" (Clark, 19 Misc 3d at 11 [Weston Patterson, J.P., dissenting]).

child to make the recording, and that this belief be objectively reasonable.

Defendant contends that <u>Pollock</u> is distinguishable because in that case the parent "recorded her child while that child was at her home," whereas here the father recorded conversations involving the child and his mother in the mother's home.  We conclude, however, that the location of the child is inapposite, so long as the child was lawfully present at the location of the conversation.  The interests of a child who is being assaulted or abused are served by having events recorded, for use by police and prosecutors, whether the crimes occur in the home of the person making the recording or somewhere else.

In light of the persuasive precedent from other jurisdictions and the reasoning set out above, we hold that if a parent or guardian has a good faith, objectively reasonable basis to believe that it is necessary, in order to serve the best interests of his or her minor[4] child, to create an audio or video recording of a conversation to which the child is a party, the parent or guardian may vicariously consent on behalf of the child to the recording.

IV.

Some criticisms of the vicarious consent doctrine have emerged in the legal literature; it has been suggested

---

[4]    A minor is "a person under the age of eighteen years" (Domestic Relations Law § 2).

"that the doctrine (1) is subject to misuse and abuse by scheming parents; (2) allows for an invasion of the child's privacy; (3) fails to recognize the child's right to make his or her own choices; and (4) will result in interfamily discord and resentment when a child finds out that his or her parents have been secretly recording private telephone conversations" (Daniel R. Dinger, <u>Should Parents Be Allowed to Record a Child's Telephone Conversations When They Believe the Child Is in Danger?: An Examination of the Federal Wiretap Statute and the Doctrine of Vicarious Consent in the Context of a Criminal Prosecution</u>, 28 Seattle U L Rev 955, 989 [2005] [summarizing criticisms before concluding that the doctrine is viable]).

We believe that the objections, which are echoed by the dissent, are misplaced. Our discussion begins with the first criticism.

In <u>Pollock</u>, while the mother insisted that she had acted out of concern for her daughter's best interests, the father claimed that her real motive was retaliation for previous instances of similar recording by him, together with a desire to hear her daughter's conversations with her lawyer. The Sixth Circuit, as we noted, remanded. A parent or guardian who is acting in bad faith or is merely curious about his or her child's conversations cannot give lawful vicarious consent to their recording. If it is not objectively reasonable to believe that a recording is necessary to serve the child's best interests, then the recording may constitute the crime of eavesdropping as defined in Penal Law § 250.05. For these reasons, the vicarious consent doctrine, properly applied, does not lend itself to

misuse and abuse by scheming parents.

The second criticism may be summarized as the concern that "parents who surreptitiously intercept telephone conversations will become privy to anything discussed in those conversations . . . [and] may learn more about the child than just what problems the child is experiencing or what dangerous situations the child might be in, thus going beyond the scope or intent of the vicarious consent doctrine" (Dinger at 992). We accept that the doctrine may have such consequences for a child's privacy, but we believe the benefits of serving a child's best interests by necessary means outweigh the detriment. We also note that a trial court that admits such a recording into evidence can and should consider all objections to the relevance of portions of the recording. It should, where possible, do so before a recording is played to the jury, so that parts that have no relevance do not become public by inclusion in a trial. In our view, the careful application of the vicarious consent doctrine by trial courts with a view to the exclusion of irrelevant evidence will address the second criticism.

The third criticism is in a sense fundamental, but it lacks merit. The concern relates to the autonomy of the child. "Traditionally at common law, and still today, unemancipated minors lack some of the most fundamental rights of self-determination . . . They are subject, even as to their physical freedom, to the control of their parents or guardians"

(Vernonia Sch. Dist. 47J v Acton, 515 US 646, 654 [1995]).  The

reason is clear.  "[T]he States validly may limit the freedom of

children to choose for themselves in the making of important,

affirmative choices with potentially serious consequences . . .

[because] during the formative years of childhood and

adolescence, minors often lack the experience, perspective, and

judgment to recognize and avoid choices that could be detrimental

to them" (Bellotti v Baird, 443 US 622, 635 [1979], reh denied

444 US 887 [1979]).  Nevertheless, we do not discount the fact

that a child's autonomy grows with age.  In deciding whether a

parent or guardian had a good faith belief that a recording was

necessary to serve the best interests of the child and that this

belief was objectively reasonable, courts must consider the age

and maturity of the child.  A significant factor in assessing

whether a parent or guardian believed in good faith that it was

necessary to make a recording without a child's express consent,

in order to serve the child's best interests, is whether the

child is capable of formulating well-reasoned judgments, of his

or her own, regarding best interests.  The same is true of the

separate assessment of whether the parent's or guardian's belief

is reasonable.  In general, the older the child, the more this

consideration will be an important factor in determining parental

good faith and reasonableness.

        Finally, the fourth concern, like the second, reflects

a side-effect of the doctrine that is justified by its goal of

serving a child's best interests.  It may be alleviated by an
effort on the part of the trial court to ensure that private
conversations are admissible only insofar as relevant.

V.

Applying the vicarious consent doctrine to the present
case, the record supports the conclusion of the courts below that
the People have sufficiently demonstrated that the father had a
good faith, objectively reasonable basis to believe that it was
necessary for the welfare of his son to record the violent
conversation he found himself listening to.  The father testified
that he was concerned for his son's safety because of the volume
and tone of defendant's threats.  Although other portions of the
father's testimony reveal that he may have been in doubt about
whether physical harm would ensue, it does not follow that he had
no good faith reason to believe that it was necessary to record
the conversation.  Furthermore, the evidence that the child had
previously expressed fear of returning home adds support to the
conclusion that the father had a good faith basis, despite his
delay in providing the recording to the police.  While defendant
argues that the father should have contacted the police earlier,
his failure to report what he had heard immediately does not
diminish the evidence of good faith.

Moreover, the father's basis is objectively reasonable.
The father had heard defendant and the child's mother yelling at
the five-year-old child, and defendant threatening to beat him.

Furthermore, he could not get through to the apartment on the landline phone.  It was reasonable for the father to conclude that making the recording was necessary to serve the child's best interests.  Additionally, the recording, which captures a five-year-old crying while defendant is threatening to hit him 14 times and referring to previous beatings, speaks volumes.  The contents of the recording demonstrate that there was an objectively reasonable basis for the father to believe that recording what he was hearing was necessary to serve his son's best interests.

VI.

Our holding should not be interpreted as a vehicle to attempt to avoid criminal liability for the crime of eavesdropping when a parent acts in bad faith and lacks an objectively reasonable belief that a recording is necessary in order to serve the best interests of his or her minor child.  Penal Law § 250.05 and CPLR 4506 cannot be so easily circumvented.  To be sure, the procedural vehicles of pretrial hearings in CPLR 4506 and CPL 710.70 must be used to determine the admissibility of any recordings and will result in the suppression of any parent's recording that a court determines did not meet our narrowly tailored and objective test.  In making this admissibility determination, a court should consider the relevant factors already discussed, which include, but are not limited to, the parent's motive or purpose for making the

recording, the necessity of the recording to serve the child's best interests, and the child's age, maturity, and ability to formulate well-reasoned judgments of his or her own regarding best interests.

                              VII.

          With respect to defendant's challenge to the jury charge on accessorial liability, the People now concede that the trial court improperly instructed the jury on a theory of criminal liability not alleged in the indictment, namely the uncharged theory that defendant committed assault by failing to protect the child from an assault by his mother.  However, the People correctly observe that a "variance between the [t]rial [j]udge's charge to the jury, on the one hand, and the allegations of an indictment, on the other, may be considered harmless where there is no possibility that the jury premised its determination of guilt upon a theory not contained in the indictment" (People v Udzinski, 146 AD2d 245, 261 [1989], lv denied 74 NY2d 853 [1989]).  The principle emerges from People v Grega (72 NY2d 489 [1988]), where this Court held that a defendant was not deprived of the right to be tried only for crimes with which the grand jury had charged him, because there was no "evidence from which the trial jury could have concluded that defendant accomplished his crimes" in the manner described by an uncharged theory of criminal liability and "the jury's guilty verdict could only have been based on the evidence of [the

crime] as charged in the indictment" (id. at 496).  Notably, a reviewing court may not apply such a harmless error analysis to an improper jury charge if "it is impossible . . . to determine whether the guilty verdict was founded on an illegal theory," for that would "in effect, assume the jury's fact-finding function by concluding that the jury must have reached its result on some alternative legal ground" (People v Martinez, 83 NY2d 26, 35 [1993], cert denied 511 US 137 [1994]).

Here, the trial court's jury charge error is harmless. There is no possibility that the jury based its verdict with respect to the assault charges on the uncharged theory that defendant stood by and failed to assist the child, while his mother assaulted him, yet at the same time the defendant possessed the state of mind required for the commission of assault.  To have concluded that defendant stood by and did nothing while the child's mother beat him, the jury would have had to discredit the testimony of the child that his mother and defendant took turns beating him and the testimony of the landlady that she heard the child addressing "Anthony" and entreating him to stop hurting him, and instead credit defendant's own testimony that he had never spanked or beaten the child.  However, to the extent defendant's testimony suggested that he did nothing while the child's mother spanked him, his testimony also told the jury that he did nothing because he was unaware of the beating until after it occurred.  That would have

been inconsistent with sharing the state of mind required for assault.  As the People point out, "[n]either side presented any evidence of a 'middle ground,' where defendant did not participate in or assist, but was aware of and failed to prevent, the [October 31] beating, and did so while sharing [the mother]'s intent to assault."

## VIII.

Defendant challenges the prosecutor's opening statement, but his contentions are unpreserved.  Defendant's remaining arguments lack merit.

Accordingly, the order of the Appellate Division should be affirmed.

People v Anthony Badalamenti

No. 71




STEIN, J.(dissenting):

The majority holds, in the face of statutes that are silent on the subject, that a parent may vicariously consent for a minor child for the purposes of satisfying the one-party consent requirement contained in New York's eavesdropping statutes. In so holding, the majority disregards settled principles of statutory interpretation and encroaches on the province of the legislature. I, therefore, dissent.

I.

Defendant was charged with criminal possession of a weapon and assaulting his girlfriend's six-year-old child, either individually or by aiding and abetting the child's mother, after the child was badly beaten with a belt in late October 2008. Defendant was also charged with endangering the welfare of the child by hitting the child with his hands and a belt between the months of January and October 2008. At trial, the People sought to introduce into evidence a recording made by the child's noncustodial father of communications that he overheard through his cell phone after the mother inadvertently answered her cell phone while in her apartment with defendant and the child.

More specifically, the father called the mother's cell

- 1 -

phone several times in succession one day in May 2008, but the mother evidently pressed the "ignore" button repeatedly to send the calls directly to her voicemail.  On the father's fifth or sixth call, the mother's phone was answered, but no one spoke to him from the other end of the line or otherwise acknowledged the call.  Listening through the open line, the father overheard defendant scolding the child, intermittently yelling at the child for supposedly misbehaving, and making reference to the child previously having been hit, as well as threatening to hit the child later that day.  After listening for a few minutes -- apparently with the understanding that none of the parties at the mother's apartment were aware that he could overhear or intended for him to hear their communications -- the father began recording the conversation and continued to do so for approximately 20 minutes.  During that time, the father also called the mother's land-line phone from his work phone, which calls went unanswered, but he made no efforts to contact the authorities.  The father turned the recording over to the police more than five months later, only after defendant and the child's mother were arrested for physically assaulting the child.  The question before us on this appeal is whether the trial court erred by permitting the People to introduce at trial this highly prejudicial recording, over defendant's objection, in connection with the endangerment count.

II.

Pursuant to Penal Law § 250.05, "[a] person is guilty of eavesdropping when he [or she] unlawfully[1] engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication." "Mechanical overhearing of a conversation" is defined as "the intentional overhearing or recording of a conversation or discussion, <u>without the consent of at least one party thereto</u>, by a person not present thereat, by means of any instrument, device or equipment" (Penal Law § 250.00 [2] [emphasis added]).

In order to deter criminal eavesdropping, CPLR 4506 provides that "[t]he contents of any overheard or recorded communication, conversation or discussion, or evidence derived therefrom, which has been obtained by conduct constituting the crime of eavesdropping, as defined by [Penal Law § 250.05], may not be received in evidence in any trial" or other proceeding, except against the individual alleged to have committed the crime of eavesdropping (CPLR 4506 [1]). "This State exclusionary provision . . . applies . . . to [eavesdropping] evidence gathered by <u>any</u> individual, and serves to deter both unlawful governmental conduct and that of private individuals" (<u>People v Capolongo</u>, 85 NY2d 151, 158-159 [1995] [emphasis added]). The

---

[1]  The term "unlawfully," as used in the eavesdropping statute, means that the wiretapping or mechanical overhearing is "not specifically authorized" by CPL articles 700 and 705, which govern the issuance of eavesdropping and video surveillance warrants and orders authorizing the use of a pen register or a trap and trace device (Penal Law § 250.00 [8]).

rationale underlying the exclusionary rule is this State's "strong public policy of protecting citizens against the insidiousness of electronic surveillance by both governmental agents and private individuals" (id. at 160; see People v Kramer, 92 NY2d 529, 538 [1998]). "New York State has, therefore, responded to the problems raised by electronic surveillance with greater protection than is conferred under Federal law, and continues to assert this strong public policy, through evolving legislation, as technology advances" (Capolongo, 85 NY2d at 160 [emphasis added]).

The majority concludes that the father's actions in overhearing and recording with his cell phone the oral communications taking place at the mother's apartment constituted mechanical overhearing within the meaning of the statute. I agree,[2] although I limit my agreement in this regard to the unique facts of this case, specifically, that: (1) the father's intent to overhear the conversation was not challenged, and the overhearing was undertaken with the understanding that the mother was oblivious to her mistake; and (2) it is not disputed that the mother, defendant, and the child were unaware of the open phone

_____

[2] While the majority focuses on the recording, I note that Penal Law §§ 250.00 and 250.05 criminalize both the mechanical "overhearing" and the mechanical "recording" of conversations to which an individual is not a party without the requisite consent. Thus, the father's conduct of maintaining the open phone line and listening to the communications is, itself, a violation of the statutes and no distinction need be drawn here between that act and the act of recording.

line and, therefore, cannot be presumed to have consented (see generally People v Basilicato, 64 NY2d 103, 115 [1984]).  I make no determination as to whether the elements of the statute would be satisfied in another case where it is disputed or not readily discernible whether the answering or placing of a phone call is intentional or inadvertent -- such as where the caller or recipient may suspect that the person on the other line wants them to overhear (for example, to obtain help).

In any event, I cannot agree that the recording here was admissible based on the vicarious consent doctrine.  While the majority's purpose in adopting this theory is a laudable one, I find no basis to conclude that the plain language of the eavesdropping statute, as enacted by the legislature, permits a parent to surreptitiously mechanically overhear or record conversations of his or her minor child -- to which the parent is not a party -- simply by virtue of the parent-child relationship. In my view, the question of whether a parent may permissibly vicariously consent on behalf of a child for purposes of the eavesdropping laws is one for the legislature, and this Court usurps the legislative prerogative by reading such a doctrine into the Penal Law.

### III.

On this appeal, the People argue that we should adopt a "vicarious consent exemption" to Penal Law §§ 250.00 and 250.05, and they urge us to apply that exemption to the facts of this

case.  The majority adopts the approach advanced by the People and holds that a parent can vicariously consent to mechanical overhearing on the child's behalf when the parent has a good-faith, objectively reasonable basis to believe that undertaking the otherwise prohibited eavesdropping is in the child's best interests.

The majority asserts that "[t]he analytical core of this case is consent" (majority op., at 10).  Rather, the true "analytical core of this case" is the application of the precepts of statutory interpretation and judicial deference to legislative concerns that is absent from the majority's decision (majority op., at 10).  Our "primary consideration" in matters of statutory interpretation "is to 'ascertain and give effect to the intention of the [l]egislature'" (Riley v County of Broome, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177).  Where statutory language is unambiguous, "'it should be construed so as to give effect to the plain meaning of the words used'" (People v Williams, 19 NY3d 100, 103 [2012], quoting People v Finnegan, 85 NY2d 53, 58 [1995], cert denied 516 US 919 [1995]).  "A court cannot by implication supply in a statute a provision which it is reasonable to suppose the [l]egislature intended intentionally to omit; and the failure of the [l]egislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended" (Statutes Law § 74; see Finnegan, 85 NY2d at 58; People

<u>v Tychanski</u>, 78 NY2d 909, 911 [1991]).  "Equally settled is the principle that courts are not to legislate under the guise of interpretation" or by reading into a statute an exception that does not exist (<u>Finnegan</u>, 85 NY2d at 58).

The plain language of Penal Law § 250.00 (2) states that "'[m]echanical overhearing of a conversation' means the intentional overhearing or recording of a conversation or discussion, <u>without the consent of at least one party thereto</u>, by a person not present thereat, by means of any instrument, device or equipment."  Nothing in this definition indicates that the legislature intended to exempt parents from the prohibition against mechanical overhearing conversations between their children and third parties.  The absence of such language is even more striking when we consider that the legislature could not have simply ignored the potential implications of the eavesdropping laws in the familial context, given that, "[i]n the private sector, the most prevalent form of illegal eavesdropping occurs in the context of marital or family relations," including custody disputes and instances of parents intercepting their children's communications (National Comm'n For The Review of Fed. & State Laws Relating to Wiretapping and Elec. Surveillance, Electronic Surveillance 161 [1976]).  The legislature's failure to expressly provide any exemption for parents, or to set forth an expanded definition of "consent" in the statute to include vicarious consent by parents, is a strong indicator that no such

special provisions -- however beneficial and practical we might consider them to be -- were intended (Penal Law § 250.00 [2]; see Finnegan, 85 NY2d at 58; Tychanski, 78 NY2d at 911).

While the majority characterizes its holding as a statutory interpretation of the undefined term "consent" (majority op., at 1), it exceeds the legitimate bounds of statutory construction by going far beyond the plain language of the statutory term "consent" to devise a test by which a parent sometimes can vicariously consent on their child's behalf and at other times cannot.  Even assuming, as the majority does, that the legislature intended to permit parents to vicariously consent to eavesdropping for the purpose of protecting their children, there is nothing in the statute or its legislative history to suggest that the legislature intended to limit that right to particular types of situations.  The majority's efforts to confine vicarious consent to apply only within specifically crafted parameters demonstrates the inconsistencies between the doctrine and the statutory language, and negates any attempt to reconcile the majority's analysis with our well-settled principles of statutory interpretation.

The majority concludes that the legislature could not have intended to abolish "the long-established principle that the law protects the right of a parent or guardian to take actions he or she considers to be in his or her child's best interests" (majority op., at 14).  While I do not dispute that parents have,

and should have, the right to exercise consent on behalf of their children in many situations, the majority supplies no analogous contexts in which a parent's ability to do so is based on a judicially-constructed test evaluating the parent's reasons for so consenting.  I find it unlikely that the legislature would endorse such a standard, rather than providing parents with a clear-cut rule by which to measure whether their actions are lawful.

It is true, as the People and the majority point out, that other courts have adopted vicarious consent exemptions to federal and state eavesdropping laws by employing the test adopted by the majority today (see e.g. Griffin v Griffin, 92 A3d 1144, 2014 ME 70 [2014]; Commonwealth v F.W., 465 Mass 1, 986 NE2d 868 [2013]; Pollock v Pollock, 154 F3d 601 [6th Cir 1998]; Thompson v Dulaney, 838 F Supp 1535 [Utah D Ct 1993]; but see State v Williams, 215 W Va 201, 207, 599 SE2d 624, 630 [2004] ["(t)he statute simply contains no vicarious consent exception for minors, and we refuse to find that one exists without a statutory basis to do so"]).  However, regardless of whether courts of other jurisdictions have seen fit to judicially engraft the vicarious consent doctrine into their statutes, we are bound by the proviso that "a statute 'must be read and given effect as it is written by the [l]egislature, not as the court may think it should or would have been written if the [l]egislature had envisaged all the problems and complications which might arise'"

(<u>Tychanski</u>, 78 NY2d at 911, quoting <u>Parochial Bus Sys. v Board of Educ. v City of N.Y.</u>, 60 NY2d 539, 548-549 [1983]).

Indeed, prior to the Appellate Term's decision in <u>People v Clark</u> (19 Misc 3d 6 [App Term, 2d Dept, 2d & 11th Jud Dists 2008], <u>lv</u> <u>denied</u> 10 NY3d 861 [2008]), relied on by the majority, it was long understood that the statutory language of Penal Law §§ 250.00 and 250.05 did not support use of the vicarious consent doctrine in New York in the eavesdropping context.  For example, in <u>Matter of Berk v Berk</u>, the Second Department held that tape recordings made by a father of a mother's conversation with the child must be suppressed as illegally obtained, noting that "[a]mple evidence is available to evaluate the best interests of the children without resorting to illegally obtained recordings of conversations between the mother and her children" (70 AD2d 943, 944 [2d Dept 1979]; <u>see</u> <u>Matter of Jaeger v Jaeger</u>, 207 AD2d 448, 449 [2d Dept 1994] ["it was error to admit the recording of the conversation between the father and the son"], <u>lv</u> <u>denied</u> 84 NY2d 812 [1995]; <u>I.K. v M.K.</u>, 194 Misc 2d 608, 611 [Sup Ct, NY County 2003] [statute contained no exception by which father could consent to recording on behalf of children]; <u>People v Heffner</u>, 187 Misc 2d 617, 618-619 [County Ct, Rensselaer County 2001] [rejecting vicarious consent doctrine]).  Notably, the legislature, which has amended Penal Law § 250.00 since the adoption of the vicarious consent exemption by other states and subsequent to the rejection of the doctrine by courts

of our state, has not sought fit to expressly incorporate that doctrine, in general -- let alone the test now endorsed by the majority -- into the statutes.

There can be no question that the prevention of child abuse, the protection of children, and the promotion of child welfare, are paramount concerns of parents, the courts, and the legislature.  To be sure, the primacy of such concerns may very well justify the relaxation of eavesdropping prohibitions in the context of parent-child relationships.  However, as the majority recognizes in addressing various criticisms of the vicarious consent doctrine -- such as the potential for misuse by parents, concern for a child's privacy interests, and the possible increase in family discord -- the determination of whether a parent should lawfully be allowed to vicariously consent for a child in order to record a conversation to which a child is a party, without the actual consent or knowledge of any parties to that conversation, is fraught with policy concerns and requires the balancing of competing societal interests, a task more appropriately left to the legislature, particularly in light of the statutory silence on the issue.

In that regard, while I appreciate the instinctive desire to permit a parent to listen to, and perhaps even record, a conversation such as the one at issue here, surreptitiously or otherwise, we must be mindful that the circumstances presented here will not be the only -- or even the most common -- type of

situation to which the majority's holding will apply.  For
example, parents in the midst of bitter custody disputes will now
be less deterred from eavesdropping on and recording their
children's conversations with the other parent, incentivized by
the possibility of obtaining admissible evidence prejudicial to
the other parent.  The ability to obtain evidence in this manner
-- evidence which, aside from two recent appellate decisions, has
heretofore been deemed inadmissible in New York court proceedings
-- will undoubtedly lead to increased familial tension,
escalation of hostility in divorce and custody proceedings, and
will result in mini-trials regarding whether the evidence is
admissible, thereby further prolonging such disputes, all to the
detriment of the children, themselves.[3]  Whether these concerns
are outweighed by the benefits of permitting parents to consent
to eavesdropping for their minor children is "a policy
determination[] . . .  beyond our authority and instead best left
for the legislature" (People v Jones, ___ NY ___, ___ 2016 NY
Slip Op 01208 [2016]).  I note only that a legislative intent

_____

     [3]  For example, while the majority asserts that the child's
age is a factor to be taken into account, its holding raises, but
does not answer, the question of whether a parent's vicarious
consent can override that of an older child who explicitly
refuses to allow a parent to listen in or record a conversation
with the other parent.  Furthermore, the majority's holding does
not apply only to situations in which the third party to the
conversation is the child's other parent or step-parent.  For
instance, it can logically be extended to conversations between
teenagers and their friends, as well as anyone else with whom the
minor interacts.

militating in favor of the majority's holding is difficult to discern from the broad statutory language prohibiting eavesdropping and the absence of any language supporting this new qualification to the statutes.

In my view, the limitation placed by the majority on the vicarious consent doctrine -- namely, the supposedly "narrowly tailored" good-faith, objectively reasonable, best interest test -- does not adequately circumscribe the plethora of communications that can be molded and manipulated to fit within its framework (majority op., at 1).  Given the sheer variety and numerosity of the types of situations in which the vicarious consent doctrine may be implicated --  including, among others, divorce and custody disputes, criminal proceedings against the third party or the minor, juvenile delinquency and Person in Need of Supervision proceedings, and any other dispute involving intra-family relations -- the determination of whether such a doctrine, unmentioned in the Penal Law, is consistent with the State's approach to eavesdropping is complicated and policy-laden.  As this Court recognized over a decade ago, "eavesdropping has grown more simple and yet infinitely more complex in the modern communication age" (Capolongo, 85 NY2d at 158).  The extent to which a parent may consent for a minor child, and under what circumstances such consent is sufficient to outweigh the State's established interest in deterring the covert interception of private conversations, is a matter for the

legislature, not this Court.

Finally, even assuming that the legislature did intend for us to judicially define "consent" in Penal Law § 250.00 (2) as articulated by the majority today, I would not apply the vicarious consent doctrine in this case. Although there can be no question that defendant's manner of speaking to the child was inexcusable and, under different circumstances may very well fall within the confines of the test adopted by the majority, the father's exact testimony when asked whether he feared for his child's safety was "I didn't think [defendant] would ever put my son in that kind of harm. Yes, the tone was getting louder and louder as I listened, but as far as physically, no, I didn't think he was being harmed like that." From my perspective, this testimony, combined with the father's failure to contact authorities to prevent harm from befalling the child at that time or at any point over the next five months, casts doubt on the father's "good faith" basis for listening to or recording the conversation.

Indeed, the circumstances of this case are a prime example of the difficulty inherent in applying the majority's new test. The majority emphasizes that eavesdropping is permissible through vicarious consent only in limited circumstances, pointing out that the Sixth Circuit in Pollock remanded the matter for closer inspection of whether the mother's real motive was concern for her child's best interests or retaliation for the father's

own dalliances in eavesdropping (see majority op., at 13, 16).
Yet, in concluding that the father vicariously consented for the
child here, the majority minimizes the father's own subjective
stated lack of concern for his child's welfare, as well as the
surrounding circumstances indicating that the recording may not
have been obtained in good faith.  In fact, the test adopted by
the majority today may ultimately turn out to be an ineffectual
one because courts will likely be loathe to reject evidence
relevant to the welfare of a child, now that it may be
admissible, even if procured in bad faith.

In sum, I conclude that the legislature's failure to
address the matter of vicarious consent in the statute, as
evidenced by its plain language, indicates that the legislature
did not intend to incorporate such a doctrine into the term
"consent" (see Penal Law § 250.00 [2]).  Thus, regardless of our
views as to the social benefits or drawbacks of permitting
parents to lawfully eavesdrop on their children, ultimately, this
is not our decision to make.  Accordingly, I would hold that,
under the particular circumstances of this case, the father
procured the recording in violation of Penal Law § 250.05 and,
consequently, admission of the highly-prejudicial tape at
defendant's trial contravened CPLR 4506.  For these reasons, I
would, at the very least, reverse defendant's conviction for
endangering the welfare of a child.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Pigott and Garcia concur.  Judge Stein dissents in an opinion in which Judges Rivera and Abdus-Salaam concur.

Decided April 5, 2016